[No. 46102. En Banc. April 10, 1980.]

THE STATE OF WASHINGTON, *Respondent,* v. RONALD JOHN DUPARD, *Petitioner.*

*Michael A. Frost,* for petitioner.

*Christopher T. Bayley, Prosecuting Attorney,* and *James A. Trujillo, Deputy,* for respondent.

HICKS, J.—This case presents an issue of first impression in this state. It may be *sui generis.* Petitioner Dupard asserts that the State is collaterally estopped in a criminal prosecution from litigating matters previously determined

in his favor at a parole revocation hearing. Both the trial court and the Court of Appeals disagreed. We affirm.

While a parolee on a 1972 Washington narcotics conviction, Dupard was arrested in King County for possession of cocaine and heroin in two separate incidents occurring October 11 and November 15, 1976. November 16, 1976, an order of parole suspension was entered against him alleging parole violations arising out of both incidents. *See* RCW 9.95.120.

December 15, 1976, 1 day prior to Dupard's arraignment in King County Superior Court on criminal charges, the parole board held a parole revocation hearing. The board member conducting the hearing found for purposes of revocation that Dupard was "not guilty" of the alleged parole violation arising out of the October 11 incident. The board member stated:

> I didn't feel that there was good enough evidence, chain evidence, and I think there's some question about that. Evidently the car wasn't registered to the parolee so I'm finding him not guilty, certainly I have some reservations, but I am going to find him not guilty of violation number 3 [the October 11, 1976 incident].

Dupard was found "guilty" of a parole violation based upon possession of narcotics underlying the November 15 arrest. Nevertheless, parole was reinstated because his maximum term expired in less than 1 month and because of the criminal proceedings pending in King County.

On the day of the parole hearing, an information was filed in King County Superior Court charging Dupard with three counts of narcotics possession. Counts 1 and 2, charging possession of cocaine and heroin with intent to manufacture or deliver, arose out of the October 11, 1976 incident. Count 3 incorporated the November 15 incident. Dupard was arraigned on December 16 and he entered a plea of not guilty. Pretrial motions were heard March 17 and 21, 1977. Dupard contended, *inter alia,* that because of the "not guilty" finding at the parole revocation hearing,

the State was collaterally estopped from prosecuting him on counts 1 and 2. He moved for dismissal of those counts.

The motion to dismiss was denied as were motions to suppress evidence obtained by police. Thereafter, based upon a stipulation regarding the evidence and the sufficiency thereof, the trial court found Dupard guilty on all counts. He appealed to the Court of Appeals on a number of grounds, and in an unpublished opinion Division One affirmed.

Dupard petitioned for discretionary review in this court. We granted review limited to a single issue: In a criminal case, is the State collaterally estopped from relitigating an issue previously decided in favor of the defendant at a parole revocation hearing?

The converse proposition has been resolved by this court. If a Washington state parolee is acquitted in a criminal trial, that acquittal does not bar the State from conducting a parole revocation hearing based upon the same incident. *Standlee v. Smith*, 83 Wn.2d 405, 518 P.2d 721 (1974). *See also Standlee v. Rhay*, 403 F. Supp. 1247 (E.D. Wash. 1975), *rev'd*, 557 F.2d 1303 (9th Cir. 1977).

The *Standlee* court relied upon "the rule that a difference in the degree of the burden of proof in the two proceedings precludes application of collateral estoppel." *Standlee v. Smith, supra* at 407.[1] The "beyond a reasonable doubt" standard applies in a criminal case, while a parole revocation hearing is governed by the less exacting "preponderance of the evidence" standard. *See* RCW 9.95-.125. Thus, a parolee defendant might be acquitted in a

---

[1]As to subsequent probation revocation proceedings, this represents the majority rule. *See, e.g., State v. Jameson*, 112 Ariz. 315, 541 P.2d 912 (1975); *In re Coughlin*, 16 Cal. 3d 52, 545 P.2d 249, 127 Cal. Rptr. 337 (1976); *Russ v. State*, 313 So. 2d 758 (Fla. 1975), *cert. denied*, 423 U.S. 924, 46 L. Ed. 2d 250, 96 S. Ct. 267 (1975); *Scott v. State*, 238 Md. 265, 208 A.2d 575 (1965); *Marshall v. Commonwealth*, 202 Va. 217, 116 S.E.2d 270 (1960); *Johnson v. State*, 240 Ga. 526, 242 S.E.2d 53, *cert. denied*, 439 U.S. 881, 58 L. Ed. 2d 194, 99 S. Ct. 221 (1978); *contra, People v. Grayson*, 58 Ill. 2d 260, 319 N.E.2d 43 (1974), *cert. denied*, 421 U.S. 994, 44 L. Ed. 2d 484, 95 S. Ct. 2001 (1975).

criminal prosecution because the State was unable to meet the burden of proof "beyond a reasonable doubt", yet the same evidence could, under the lesser standard of proof, support parole revocation. *See One Lot Emerald Cut Stones & One Ring v. United States,* 409 U.S. 232, 34 L. Ed. 2d 438, 93 S. Ct. 489 (1972); *Beckett v. Department of Social & Health Servs.,* 87 Wn.2d 184, 550 P.2d 529 (1976).

Chronologically, the proceedings in the instant case present the reverse pattern of *Standlee.* Dupard prevailed in a parole revocation hearing as to the incident ultimately charged as counts 1 and 2. Nonetheless, the State, through the Prosecuting Attorney for King County, proceeded to prosecute him under a more stringent standard of proof at a criminal trial. The question occurs, if the State did not meet the lesser burden of proof in the revocation hearing, should it not be precluded from relitigating that issue (counts 1 and 2) under the more stringent standard of proof required of it in a criminal trial?

■ Collateral estoppel, perhaps more descriptively denoted as issue preclusion, and res judicata are doctrines having a common goal of judicial finality. The principles underlying both doctrines are to prevent relitigation of already determined causes, curtail multiplicity of actions, prevent harassment in the courts, inconvenience to the litigants, and judicial economy. *Bordeaux v. Ingersoll Rand Co.,* 71 Wn.2d 392, 429 P.2d 207 (1967); *see generally* 1B J. Moore, *Federal Practice* ¶ 0.405 (1972).

Of the two doctrines, res judicata is the more comprehensive because it relates to a prior judgment arising out of the same cause of action between the parties. Collateral estoppel is less encompassing, barring relitigation of a particular issue or determinate fact. Both doctrines require a large measure of identity as to parties.

In 1970, the United States Supreme Court accorded collateral estoppel constitutional dimension by incorporating it into the Fifth Amendment protection against double

jeopardy.[2] There, the court speaking of collateral estoppel noted:

> It means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.

*Ashe v. Swenson,* 397 U.S. 436, 443, 25 L. Ed. 2d 469, 90 S. Ct. 1189 (1970).

As to identity of parties, mutuality of parties is not a limiting ingredient of the collateral estoppel rule imposed by the Fifth and Fourteenth Amendments. It is sufficient that the party *against whom* the plea of collateral estoppel is asserted was a party or in privity with a party in the prior litigation. *See Simpson v. Florida,* 403 U.S. 384, 29 L. Ed. 2d 549, 91 S. Ct. 1801 (1971).

 Here, the prosecutor asserts that the State was not a party at the parole revocation hearing because "the State" for purposes of parole revocation is not "the State" for purposes of criminal prosecutions. We find this contention to be without merit. Although the prosecutor was not a participant in the revocation proceeding, an assistant attorney general was. The same sovereign is involved in both instances.

 In *State v. Peele,* 75 Wn.2d 28, 30, 448 P.2d 923 (1968), we said:

> It has been long established that the doctrines of res judicata and collateral estoppel do apply in criminal cases. See, Modern Status of Doctrine of Res Judicata in Criminal Cases, Annot., 9 A.L.R.3d 203 (1966). These doctrines, as applied to criminal cases, bar relitigation of issues actually determined by a former verdict and judgment. *Sealfon v. United States,* 332 U.S. 575, 98 L. Ed. 180, 68 Sup. Ct. 237 (1948); *United States v. Burch,* 294

---

[2]Although parole revocation proceedings may be characterized as "quasi-judicial", no jeopardy attaches for double jeopardy purposes. Such proceedings are a continuing consequence of the *original* conviction. *See Standlee v. Smith, supra.* Thus, to the extent that collateral estoppel is applicable, the claim does not reach the constitutional dimensions of *Ashe v. Swenson, supra. Cf. United States ex rel. DiGiangiemo v. Regan,* 528 F.2d 1262 (2d Cir. 1975).

F.2d 1 (5th Cir. 1961); *State v. Barton,* 5 Wn.2d 234, 105 P.2d 63 (1940). The application of collateral estoppel in a criminal action is a 2–step operation: the first is to determine what issues were raised and resolved by the former judgment, and the second is to determine whether the issues raised and resolved in the former prosecution are identical to those sought to be barred in the subsequent action.

Given the proposition that collateral estoppel applies in criminal cases, does it operate to bar a court (or jury) in a criminal prosecution from redetermining an issue previously resolved by an *administrative agency*? Stated differently, is the disposition of the Board of Prison Terms and Paroles a "valid and final judgment" for collateral estoppel purposes?

█ It is reasonably well accepted that in appropriate circumstances estoppel can prevent relitigation of issues determined by an administrative agency acting in a judicial capacity:

> When an administrative agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate, the courts have not hesitated to apply *res judicata* to enforce repose.

*United States v. Utah Constr. & Mining Co.,* 384 U.S. 394, 422, 16 L. Ed. 2d 642, 86 S. Ct. 1545 (1966). *See generally* K. Davis, *Administrative Law Text,* ch. 18 (3d ed. 1972). There can be little doubt the Washington State Board of Prison Terms and Paroles acts in at least a quasi–judicial capacity when it conducts a parole revocation hearing. Procedures approximating judicial proceedings are mandated statutorily and constitutionally. *See* RCW 9.95.121–.126; *Morrissey v. Brewer,* 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972); *In re Akridge,* 90 Wn.2d 350, 581 P.2d 1050 (1978).

The parole officer files allegations of violation of parole conditions and is represented by an assistant attorney general at the revocation hearing. That hearing is conducted before member(s) of the Board of Prison Terms and

Paroles. The board is to make findings and conclusions upon the allegations of parole violations. RCW 9.95.125.

Despite the similarities between parole revocation hearings and judicial proceedings, the Court of Appeals held:

> Because the parole board is not a court of law, its decision was not a valid judgment and could not be the basis for applying the doctrine of collateral estoppel.

By limiting "valid and final judgments" to those pronounced by courts of law, the Court of Appeals sweeps too broadly.

Decisions of administrative agencies may be accorded preclusive effect in subsequent litigation. *See, e.g., Luisi Truck Lines, Inc. v. State Utils. & Transp. Comm'n,* 72 Wn.2d 887, 435 P.2d 654 (1967). The applicability of collateral estoppel in each case is dependent upon a number of factors, including (1) whether the agency acting within its competence made a factual decision; (2) agency and court procedural differences; and (3) policy considerations. *See generally* Vestal, *Preclusion/Res Judicata Variables: Adjudicating Bodies,* 54 Geo. L.J. 857, 874 (1966).

Here, possession of narcotics is the disputed issue of fact common to both proceedings. The facts constituting the basis of the prosecutor's counts 1 and 2 were the identical facts considered in the parole revocation hearing. The decision reached by the board regarding those facts, while perhaps untimely, would appear to be within its competence. While we have some doubts that the issue was "conclusively determined on its merits" at the parole revocation hearing, it is not necessary to decide that question.

The procedural differences between "revocation hearings" and criminal prosecutions are not dispositive in this instance. In fact, such differences as do exist arguably are a detriment to the parolee, particularly the lesser burden of proof and evidentiary standards applied at revocation hearings.

■ Policy arguments have been often the deciding factor when collateral estoppel is based upon prior administrative determination. 2 K. Davis, *Administrative Law*

*Treatise* § 18.04 (1958 & Supp. 1970). The doctrine may be qualified or rejected when its application would contravene public policy. *See, e.g., Tipler v. E.I. duPont deNemours & Co.*, 443 F.2d 125 (6th Cir. 1971).

■ We believe public policy dictates rejection of collateral estoppel in this instance. Parole revocation is not part of a new criminal prosecution. *Standlee v. Smith*, 83 Wn.2d 405, 518 P.2d 721 (1974). *See also Standlee v. Rhay*, 403 F. Supp. 1247 (E.D. Wash. 1975), *rev'd*, 557 F.2d 1303 (9th Cir. 1977). Rather, it is a "continuing consequence" of the *original* conviction.

The parole revocation process has been described as a twofold inquiry. The first involves "a wholly retrospective factual question": has the parolee in fact violated a condition of parole? Assuming an affirmative answer, the second step addresses the appropriate disposition of the matter. *In re Akridge, supra* at 351. In the instant case, the basic factual question to be answered is whether the parolee in fact committed a new crime. As a general proposition, we believe this inquiry is more appropriately addressed to the criminal justice system.[3] *See United States ex rel. Burgess v. Lindsey*, 395 F. Supp. 404, 410 (E.D. Pa. 1975).

We believe the legislature contemplated that new crimes would be processed initially in the criminal justice system rather than by a parole revocation hearing. It may be noted that RCW 9.95.120 provides for a hearing within 30 days for one accused of violating his parole "other than the commission of, and conviction for, a felony or misdemeanor . . ." At another point in the same section reference may

---

[3] When the grounds for parole revocation also constitute a criminal offense, there is no statutory or constitutional requirement that the trial be held prior to the revocation hearing. *See generally McGautha v. California*, 402 U.S. 183, 28 L. Ed. 2d 711, 91 S. Ct. 1454 (1971). *See also State v. Cyganowski*, 21 Wn. App. 119, 584 P.2d 426 (1978). Parole may be suspended pending disposition of the new criminal charge. RCW 9.95.120. *Cf. ABA Standards Relating to Probation* § 5.3 (Approved Draft, 1970) (revocation proceedings based solely on commission of another crime should not ordinarily be initiated prior to the disposition of that charge).

be found that "a parole is suspended pending the disposition of a new criminal charge, . . ."

Practical public policy requires that new criminal matters, when charged in the criminal justice system, must be permitted to be there decided, unhampered by any parallel proceedings of the Board of Prison Terms and Paroles. Consequently, we hold that the board's parole revocation hearing decision regarding Dupard may not be interposed as a basis for collateral estoppel in his prosecution on new criminal charges.

Affirmed.

UTTER, C.J., and ROSELLINI, WRIGHT, BRACHTENBACH, HOROWITZ, DOLLIVER, and WILLIAMS, JJ., concur.

STAFFORD, J., concurs in the result.