34 P.3d 1255 (2001)
109 Wash.App. 310
STATE of Washington, Respondent,
v.
Ramiro Corona VASQUEZ, Appellant.
No. 19493-1-III.
Court of Appeals of Washington, Division 3.
November 27, 2001.
*1257 Paul J. Wasson, Spokane, for appellant.
Edward A. Owens, Deputy Prosecuting Atty., Ephrata, for respondent.
*1256 SWEENEY, J.
Collateral estoppel precludes relitigation of an issue already decided. The doctrine reflects our legal system's emphasis on finality. State v. Barnes, 85 Wash.App. 638, 652-53, 932 P.2d 669 (1997). Here, a Department of Licensing hearing officer concluded that a Quincy police sergeant did not have probable cause to stop Ramiro Vasquez for speeding. Mr. Vasquez was charged with driving while under the influence and possession of cocaine after the officer searched him incident to the arrest.
The primary question before us is whether the Department of Licensing hearing officer's conclusion that the sergeant did not have probable cause to stop Mr. Vasquez collaterally estops a superior court from revisiting that same issue in a later trial for possession of cocaine and driving under the influence. We conclude that it does not.
We also reject Mr. Vasquez's challenge to the court's finding of probable cause and his challenge to the validity of his jury waiver. We therefore affirm the judgment of the trial court.

FACTS
Quincy Police Sergeant Scott Jones saw two cars make u-turns at the same time. One of the cars drove along the curb and kicked up debris. He followed the vehicle and paced it traveling above the posted limit of 25 mph. He stopped the car.
Ramiro Vasquez was the driver. Sergeant Jones smelled alcohol and noticed that Mr. Vasquez's eyes were glazed and red. He also saw a partially consumed six-pack of beer. Mr. Vasquez acknowledged that he had been drinking. Sergeant Jones administered a portable breath test that measured Mr. Vasquez's alcohol concentration at .141. A person is guilty of driving under the influence if he or she has an alcohol concentration of .08 or higher within two hours after driving. RCW 46.61.502.
Sergeant Jones arrested Mr. Vasquez for driving under the influence. He later searched Mr. Vasquez and found two folded dollar bills containing a white powder that field-tested positive for cocaine.
Mr. Vasquez was charged with possession of cocaine and driving while under the influence (DUI).
At an administrative license suspension hearing, a hearing officer concluded that Sergeant Jones did not have probable cause to stop Mr. Vasquez.
Armed with that decision, Mr. Vasquez moved to dismiss his criminal charges arguing *1258 that the trial judge was estopped from revisiting the question of probable cause. He also argued that Sergeant Jones lacked probable cause, anyway. The court denied his motion. Mr. Vasquez then waived his right to a jury trial. The court found him guilty as charged.

COLLATERAL ESTOPPEL PROBABLE CAUSE
STANDARD OF REVIEW
Whether the court is collaterally estopped from deciding an issue is a question of law. Our review is then de novo. Resolution Trust Corp. v. Keating, 186 F.3d 1110, 1114 (9th Cir.1999). The burden of proof is on the party asserting collateral estoppel. McDaniels v. Carlson, 108 Wash.2d 299, 303, 738 P.2d 254 (1987).
PURPOSE OF COLLATERAL ESTOPPEL RULE
Collateral estoppel, in a criminal setting, stems from the Fifth Amendment's protection against double jeopardy. State v. Williams, 132 Wash.2d 248, 253-54, 937 P.2d 1052 (1997).
The purpose of collateral estoppel is to "prevent relitigation of already determined causes, curtail multiplicity of actions, prevent harassment in the courts, inconvenience to the litigants, and judicial economy." State v. Dupard, 93 Wash.2d 268, 272, 609 P.2d 961 (1980). It does this, of course, by prohibiting the relitigation of questions already resolved by final judgment between the same parties. Williams, 132 Wash.2d at 253-54, 937 P.2d 1052.
THE TEST
The test for collateral estoppel is well settled. The party asserting the doctrine must show that:
"(1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice."
Thompson v. Dep't of Licensing, 138 Wash.2d 783, 790, 982 P.2d 601 (1999) (quoting Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wash.2d 255, 262-63, 956 P.2d 312 (1998)).
Mr. Vasquez meets the first three requirements. Our decision turns on whether application of the doctrine here works an injustice.
INJUSTICE/PUBLIC POLICY
The injustice element recognizes the significant role that public policy plays in deciding whether to preclude relitigation of a question based on collateral estoppel. Williams, 132 Wash.2d at 257, 937 P.2d 1052. And therefore application of the doctrine of collateral estoppel often turns on public policy questions. Dupard, 93 Wash.2d at 275-76, 609 P.2d 961 ("The doctrine may be qualified or rejected when its application would contravene public policy.").
Civil proceedings, including administrative hearings, may bar criminal prosecutions on grounds of collateral estoppel. See Williams, 132 Wash.2d at 254, 937 P.2d 1052; Dupard, 93 Wash.2d at 275, 609 P.2d 961; see also Yates v. United States, 354 U.S. 298, 335-36, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957), overruled on other grounds by Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978). But Washington courts have not applied collateral estoppel to future criminal prosecutions. Williams, 132 Wash.2d at 254, 937 P.2d 1052; State v. Gary J.E., 99 Wash.App. 258, 263, 991 P.2d 1220, review denied, 141 Wash.2d 1020, 10 P.3d 1074 (2000).
Washington has not, however, addressed the specific question herewhether an administrative license suspension hearing should bar relitigation of issues in subsequent criminal prosecutions. Other states have addressed the question. And all have refused to bar criminal prosecutions based on earlier administrative rulings. See State v. Higa, 79 Hawai`i 1, 897 P.2d 928, 936-37 (1995) (court held collateral estoppel did not bar criminal prosecution because there was no double jeopardy violation and state did not have a "full and fair opportunity to litigate" at the administrative level); State v. Gusman, 125 Idaho 810, 874 P.2d 1117 (1993) (court, applying public policy, refused to bind criminal proceeding to administrative decision that police lacked probable cause to stop *1259 the defendant), aff'd, 125 Idaho 805, 874 P.2d 1112 (1994); State v. Young, 249 Neb. 539, 544 N.W.2d 808, 813 (1996) ("Because Nebraska's [administrative license revocation] proceedings serve mostly remedial functions, Young's subsequent criminal prosecution is not barred by principles of double jeopardy or, accordingly, principles of collateral estoppel.").
Washington has refused to apply collateral estoppel to criminal prosecutions following decisions in hearings for child dependency,[1] overpayment of public assistance,[2] and parole revocation.[3] And we refuse to do so for license suspensions for a number of reasons.
First, the purpose of a license suspension hearing is qualitatively different than a criminal trial. A license suspension hearing following a DUI charge is limited. The administrative hearing focuses on whether the officer had reasonable grounds to believe that a person was driving under the influence. RCW 46.20.308(8).
The State charged Mr. Vasquez with possession of cocaine in addition to the DUI. A criminal trial focusing on whether Mr. Vasquez possessed cocaine is a much more serious matter with the potential for much more serious sanctions than driving an automobile while under the influence. And the record in the administrative hearing reflects as much.
Here, we have only a copy of the hearing officer's decision. And that decision recites that only two exhibits were admitted: a copy of the "Report of Breath/Blood Test for Alcohol" and 34 pages of an officer's report and accompanying documents. This is a much less rigorous showing of evidence than that required by the typical criminal felony trial.
Second, this administrative hearing is a streamlined process, largely because of what is at stake. Here, it was conducted over the phone. And it was conducted without the benefit of live testimony. Mr. Vasquez's criminal trial, on the other hand, generated almost 400 pages of transcript over the course of three days of proceedings.
Third, barring criminal prosecutions based on decisions reached in administrative hearings would significantly change the scope of, and effort required for, such administrative hearings:
longer administrative hearings and greater delays [would result] since the State would "be required to marshall all of the prosecution's potential witnesses and evidence at the administrative level." This would leave "district attorney offices to allocate a greater proportion of their ever-decreasing resources to administrative matters, rather than reserving these scarce resources for the actual prosecution of serious criminal cases in court."
Williams, 132 Wash.2d at 258, 937 P.2d 1052 (citations omitted).
Finally, whether a person has committed a crime and the procedural safeguards that surround that determination are "more appropriately addressed to the criminal justice system." Dupard, 93 Wash.2d at 276, 609 P.2d 961.
We conclude that allowing a decision of the Department of Licensing to bar further litigation by the State on the question of probable cause would work an injustice. And we therefore refuse to apply collateral estoppel.

PROBABLE CAUSE TO STOP MR. VASQUEZ'S VEHICLE
STANDARD OF REVIEW
We are called upon to review a probable cause determination made by a police officer. That is different than a review of a similar determination by a magistrate. The latter is reviewed for an abuse of discretion. State v. Anderson, 105 Wash. App. 223, 228-29, 19 P.3d 1094 (2001). The review of a police officer's probable cause determination is not so deferential, or well settled.
A number of decisions decide the issue of whether police have probable cause as a factual question. And they, accordingly, apply the substantial evidence standard of review.[4] But the question of probable cause *1260 is a mixed question of law and fact. And, therefore, it involves a review of both facts and law.
We first review the trial court's factual findings, i.e., the who, what, when, and where, for substantial evidence. State v. Hill, 123 Wash.2d 641, 647, 870 P.2d 313 (1994); Bokor v. Dep't of Licensing, 74 Wash. App. 523, 526-27, 874 P.2d 168 (1994). Substantial evidence requires "a sufficient quantity of evidence in the record to persuade a fair-minded, rational person of the truth of the finding." Hill, 123 Wash.2d at 644, 870 P.2d 313.
We then decide whether the facts support the legal conclusionprobable cause. And this is a legal question that we review de novo. See State v. Thorn, 129 Wash.2d 347, 351, 917 P.2d 108 (1996) (holding that the determination of a seizure is a mixed question of law and fact; applying substantial evidence standard to factual findings and de novo review to whether those facts constitute a seizure).
PROBABLE CAUSE
Probable cause requires facts and circumstances within the arresting officer's knowledge which are sufficient to justify a reasonable belief that an offense has been committed. State v. Terrovona, 105 Wash.2d 632, 643, 716 P.2d 295 (1986).
Here, the trial court found that Sergeant Jones had enough time to observe and pace Mr. Vasquez for the offense of speeding. Report of Proceedings (RP) at 132. Sergeant Jones testified that he paced Mr. Vasquez's vehicle at 38 mph. RP at 28. The speed limit was 25 mph. RP at 23-24. The trial court's factual finding is then supported by substantial evidence. Hill, 123 Wash.2d at 644, 870 P.2d 313. And speeding is a traffic infraction. RCW 46.61.400(2); RCW 46.63.020. Sergeant Jones then had probable cause to stop Mr. Vasquez's car for a traffic infraction. And the court's conclusion that the sergeant had probable cause to stop Mr. Vasquez is correct as a matter of law.

JURY WAIVER
The right to a jury trial is constitutional. And so the waiver of that right must be "knowingly, intelligently and voluntarily made." State v. Bugai, 30 Wash.App. 156, 157, 632 P.2d 917 (1981). The waiver must either be in writing, or done orally on the record. State v. Wicke, 91 Wash.2d 638, 645-46, 591 P.2d 452 (1979); State v. Rangel, 33 Wash.App. 774, 775-76, 657 P.2d 809 (1983). Because it implicates the waiver of an important constitutional right, our review is de novo. See United States v. Villa-Fabela, 882 F.2d 434, 437 (9th Cir.1989) (de novo review applied to claims that waiver of counsel not knowing and intelligent), overruled on other grounds by United States v. Proa-Tovar, 975 F.2d 592 (9th Cir.1992).
The colloquy in this record supports the conclusion that Mr. Vasquez's waiver was knowing, intelligent, and voluntary. The trial court repeatedly asked Mr. Vasquez whether he understood what it meant to waive his right to a jury. The court allowed Mr. Vasquez to speak with his attorney off the record to ensure he understood. We will set out the colloquy at some length because of the importance of the challenge:
THE COURT: Okay. Mr. Hernandez, do you need time to talk to your client, then?
MR. HERNANDEZ [Counsel for Mr. Vasquez]: No. I think that's fine. We are ready to go.
THE COURT: Meaning?
MR. HERNANDEZ: Waiving the jury.
THE COURT: He desires to waive the jury?
MR. HERNANDEZ: Yes, sir.
THE COURT: Mr. Vasquez, do you know what it means to waive a jury?
THE DEFENDANT: No.
THE COURT: Okay. It means that you would have a trial in front of me, in front of the Judge, and the jury wouldn't decide your guilt or innocence. Do you understand that?
THE DEFENDANT: Okay.
THE COURT: What do you want? You have a right to a jury trial. Do you desire to give up that right to a jury trial?
*1261 THE DEFENDANT: Yes.
THE COURT: Do you understand that there would be 12 jurors?
THE DEFENDANT: Yes.
THE COURT: And that they would have to be unanimous, in their finding of guilt? Every one of them would have to find you guilty?
THE DEFENDANT: Yes. I understand.
THE COURT: Okay. And you understand you would be presumed innocent until the charges were provenor unless the charges were proven beyond a reasonable doubt by the State?
THE DEFENDANT: Yes.
THE COURT: And you understand you have a legal right to a jury of 12 members in this case?
THE DEFENDANT: I'm not sure. My lawyer what the preference would be.
MR. HERNANDEZ: I'm sorry, your Honor?
THE COURT: Could you repeat that please, Mr.
THE DEFENDANT: I'm not sure. My lawyerwhat the preference would be.
THE COURT: My only concernyou understand there would be 12 jurors?
THE DEFENDANT: Yes.
THE COURT: Do you desire to give up that right?
THE DEFENDANT: Yes.
THE COURT: All right. Mr. Hernandez, do you need additional time to talk to your client to make sureyou want to talk to your client to make sure he understands that right?
MR. HERNANDEZ: I think I do, your Honor.
THE COURT: All right. You want to step out?
MR. HERNANDEZ: Please. (Discussion off the record)
THE COURT: We'll go back on the record. It's 10:40. Mr. Hernandez has met with his client for about three minutes. Three to five minutes.
Mr. Hernandez, do you
MR. HERNANDEZ: He understands, and he wishes to proceed without a jury.
THE COURT: Is that correct, sir? Mr. Vasquez, you desire to proceed without a jury?
THE DEFENDANT: Yes.
RP at 173-75.
Jury waivers should be made in writing. But they are nonetheless effective if made knowingly, intelligently, and voluntarily in open court. See CrR 6.1(a) ("Cases required to be tried by jury shall be so tried unless the defendant files a written waiver of a jury trial, and has consent of the court."); Wicke, 91 Wash.2d at 645-46, 591 P.2d 452 (waiver may be made orally in open court); Rangel, 33 Wash.App. at 775-76, 657 P.2d 809 (same). Mr. Vasquez's jury waiver was effective.
The decision of the trial court is affirmed.
WE CONCUR: SCHULTHEIS, J., and KATO, J.
NOTES
[1] State v. Cleveland, 58 Wash.App. 634, 636, 794 P.2d 546 (1990).
[2] Williams, 132 Wash.2d at 258, 937 P.2d 1052.
[3] Dupard, 93 Wash.2d at 277, 609 P.2d 961.
[4] See State v. Greene, 97 Wash.App. 473, 478, 983 P.2d 1190 (1999); State v. Cole, 73 Wash.App. 844, 849, 871 P.2d 656 (1994); Waid v. Dep't of Licensing, 43 Wash.App. 32, 34-35, 714 P.2d 681 (1986).