IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| TERI COLLIER,<br><br>                    Appellant,<br><br>        v.<br><br>WASHINGTON STATE DEPARTMENT<br>OF HEALTH/NURSING COMMISSION,<br>and WASHINGTON HEALTH<br>PROFESSIONAL SERVICES,<br><br>                    Respondents. | No. 85177-2-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

COBURN, J. — Teri Collier appeals the summary judgment dismissal of her claims of negligent misrepresentation, intentional misrepresentation, and intentional infliction of emotional distress against the Washington State Department of Health (Department), the Nursing Care Quality Assurance Commission (Commission)[1] and Washington Health Professional Services (WHPS). These claims are based on the same issue and facts from an administrative hearing which resulted in temporary suspension of Collier's license to practice as a registered nurse in Washington. Because Collier had every opportunity and incentive to vigorously litigate these issues at her administrative

_____

[1] Collier's complaint identified two of the defendants as "Washington State Department of Health/Nursing Commission." The Washington Department of Health and the Nursing Care Quality Assurance Commission are the correct names of these parties. The Commission is a governor-appointed statewide commission, whose purpose is to regulate the competency and quality of health care providers under its jurisdiction. RCW 18.79.010, .070.

hearing and subsequent judicial review, we affirm the summary judgment dismissal on the basis of collateral estoppel.

FACTS

Collier, a licensed registered nurse since 2000, was employed at a hospital in Lakewood, Washington in 2015. In October 2015, coworkers observed Collier exhibit "abnormal behavior and signs of impairment." She admitted taking some medication, but refused to take a "for cause" drug test and was removed from the work schedule. A review of Collier's medication administration records and hospital medication logs revealed drugs that were unaccounted for.

The Commission opened a complaint against Collier and initiated remedial proceedings. Under the Uniform Disciplinary Act, this took the form of a Stipulation to Informal Disposition (STID), a statutory informal settlement that resolves allegations of unprofessional conduct short of administrative proceedings. Ch. 18.130 RCW. RCW 18.130.172 provides that "the disciplinary . . . authority may furnish a statement of allegations to the licensee along with a detailed summary of the evidence relied upon to establish the allegations and a proposed stipulation for informal resolution of the allegations."

Collier entered into a STID with the Commission. She and her counsel signed the STID under a statement that Collier read, understood and agreed to the STID. Under the agreement, Collier agreed to "contact and actively participate in the intake process with the Washington Health Professional Services (WHPS) monitoring program." Under the STID,

2

> [i]f Respondent is required to enroll and participate in the WHPS monitoring program, it will be at her expense, until the program determines that participation in the program is no longer necessary. The length of participation in the WHPS monitoring program will be at the sole discretion of the program. Initial monitoring contracts may have a duration of one (1) to five (5) years and will require biological fluid or tissue screenings as deemed necessary by the WHPS monitoring program. Failure to comply with requirements of the WHPS monitoring program, terminating the program without permission, or being expelled from the program shall constitute a violation of this Stipulation by Respondent and will subject Respondent to further discipline.

The final agreement did not include language from a previous draft that Collier had objected to. Her counsel, after receiving the initial draft STID, successfully requested the STID remove language that would have required Collier to be on two years of probation even if an evaluation determined that she did not have a substance abuse issue.

From a list of approved providers, Collier selected Dr. Scott Wykes to complete a substance abuse evaluation. Wykes ultimately diagnosed Collier with a mild sedative use disorder and submitted his evaluation to the Commission. A member of WHPS' monitoring program reviewed the evaluation and determined that Collier should participate in the WHPS monitoring program for three years and forwarded a contract for Collier to sign. After Collier refused to sign the contract, WHPS closed her file and the Commission opened a complaint against Collier alleging that she failed to sign a WHPS contract. In August 2017, the Commission issued a Statement of Charges against Collier for noncompliance. The Department of Health Nursing Program alleged that Collier committed unprofessional conduct as defined by RCW 18.130.180(9) for failing to comply

with an STID.  Collier denied the majority of allegations in the Statement of Charges and requested an administrative hearing.

PROCEDURAL HISTORY

In January 2018, the hearing was held before a three-member panel of the Commission.  Collier was represented by her counsel while the Department was represented by an Assistant Attorney General.  The parties presented testimony and exhibits.  The Department presented testimony of a case manager from WHPS.  Collier testified on her own behalf and presented the testimony of Dr. Wykes.

At the hearing, Collier submitted the initial proposed STID, the signed STID, and the e-mail string between her counsel and the attorney for the Commission reflecting her counsel's request to eliminate the language from the proposed STID that would have required two years' probation even if Collier was found to not have a substance use problem.  Collier maintained that she did comply with the STID by obtaining an evaluation because the Commission made a fundamental grammatical mistake in paragraph 2.2.  That part of the STID reads:

> The Commission has determined that requiring Respondent to obtain a substance abuse evaluation through the WHPS monitoring program and, if recommended by the WHPS monitoring program, to enroll in the program and abide by its treatment requirements and practice restrictions will adequately protect the public's health, safety and welfare.

Relevant in this appeal is Collier's argument at the hearing that the Commission's "use of a comma" tied the two concepts of "requirement to have a substance

4

abuse evaluation" and WHPS' "independent ability to require [Collier] to engage in a monitoring program" together rather then creating "two separate components."

In its amended findings, the Commission disagreed and concluded "the placement of the comma does not prevent [Collier] from understanding that she was required to obtain an evaluation and was required to enroll in the program if the WHPS monitoring program so determined." The Commission noted that "Dr. Wykes admitted [that] he does not decide if the WHPS monitoring program requires monitoring." The Commission found that "Paragraphs 2.2 and 3.1 of the [STID] clearly state that the WHPS monitoring program, and not the evaluator, determines whether [Collier] is required to participate in the monitoring program." The Commission suspended Collier's license to practice as a registered nurse in Washington until she signs the WHPS contract and complies with their monitoring program.

In March 2018, Collier petitioned the Snohomish County Superior Court for judicial review. In February 2022, the superior court denied the petition for review, finding that the "Commission did not err when it concluded that the language of the executed Stipulation to Informal Disposition clearly stated that the Washington Health Professional Services program, not the evaluator, determines whether Ms. Collier is required to participate in the monitoring program."

A commissioner of this court denied review because Collier filed a late notice of appeal in March 2022. While Collier had been seeking judicial review of

the administrative decision by the Commission, Collier also filed a civil lawsuit in October 2018 against the Department, Commission and WHPS for negligent misrepresentation, intentional misrepresentation, and negligent infliction of emotional distress. Collier claims that she "relied on the negotiated terms of the [STID and] followed through completely and complied with all terms of the [STID] as drafted and agreed." She alleges that in her reliance she was misled by the Commission which was "aware that despite the negotiated and agreed upon [STID] the WHPS program would impose its own contract and require substantially the same provisions removed with the agreement of the Commission [to the amended] STID." Collier based all her claims around the language in the STID.

Respondents filed a joint motion for summary judgment in February 2023. They assert that prior rulings applied to all the issues under the theory of collateral estoppel, that Collier has not sufficiently pled the elements of her claims, and that quasi-judicial immunity and statutory immunity precludes the lawsuit against the Commission and WHPS. Snohomish County Superior Court granted respondents' motion for summary judgment and dismissed the matter with prejudice. The court did not identify on which basis the court based its ruling.

Collier appeals.

## DISCUSSION

We review a trial court's grant of summary judgment de novo. Ranger Ins. Co. v. Pierce County, 164 Wn.2d 545, 552, 192 P.3d 886 (2008). Summary

6

judgment is an appropriate remedy "only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Scrivener v. Clark Coll., 181 Wn.2d 439, 444, 334 P.3d 541 (2014); see also CR 56(c). A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation. Wilson v. Steinbach, 98 Wn.2d 434, 437, 656 P.2d 1030 (1982).

The doctrine of collateral estoppel "is well-known to Washington law as a means of preventing the endless relitigation of issues already actually litigated by the parties and decided by a competent tribunal. Collateral estoppel promotes judicial economy and prevents inconvenience, and even harassment, of parties." Reninger v. Dep't of Corrections, 134 Wn.2d 437, 449, 951 P.2d 782 (1998). Collateral estoppel, where applicable, is employed to "prevent[] a second litigation of *issues* between the parties, even though a different claim or cause of action is asserted." Seattle-First Nat'l Bank v. Kawachi, 91 Wn.2d 223, 225-26, 588 P.2d 725 (1978) (emphasis added).

Respondents argue, and Collier concedes, that "the central issue in all of Collier's present claims" is whether the STID was unequivocal that the WHPS had authority to decide that Collier was required to enroll in a monitoring program following the report from Dr. Wykes. This question was resolved with finality at the administrative proceedings and subsequent appeal for judicial review. Because "[d]ecisions of administrative tribunals may have preclusive effect," we analyze the elements of collateral estoppel of the relevant agency findings to

determine whether Collier's claims hinge on an issue that has not already been litigated with finality. Reninger, 134 Wn.2d at 449.

Before collateral estoppel may be applied to an agency finding, we first consider three factors under Washington law: "(1) whether the agency acted within its competence, (2) the differences between procedures in the administrative proceeding and court procedures, and (3) public policy considerations." Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 308, 96 P.3d 957 (2004) (citing State v. Dupard, 93 Wn.2d 268, 275, 609 P.2d 961 (1980)).

Collier maintains that "the actions of the [Commission] were not within its competence when it unilaterally acted to force Collier to comply with the very terms that she and her [c]ounsel had negotiated out of the original STID." She also summarily asserts that Christensen is inapposite, but presents no supporting argument. The alleged unilateral action was WHPS dictating to Collier its determination of the length of her participation in the monitoring program, which flows from the STID that provides that WHPS has "the sole discretion" to determine the length of participation. The record establishes that the agency's actions conform to the statutory powers that the legislature assigned the Commission under the Uniform Disciplinary Act, chapter 18.130 RCW. RCW 18.130.172 provides the basis for the Commission's presentation of a "proposed stipulation of informal resolution of the allegations." RCW 18.130.180 expressly outlines what conduct may constitute unprofessional conduct for a license holder. RCW 18.130.160 outlines the sanctions that may be imposed by such a

stipulation. Nothing in the record suggests that the Commission did not act within its competence.

The record also establishes that the administrative hearing was a sufficient forum to litigate the issue and Collier presents no argument otherwise. She also does not put forth any public policy considerations which would weigh against application of collateral estoppel. We see no reason to not consider the application of collateral estoppel on the administrative agency decision.

We turn now to the universal elements of collateral estoppel. The party which asserts collateral estoppel must prove:

> (1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.

Nielson v. Spanaway Gen. Med. Clinic, Inc., 135 Wn.2d 255, 262-63, 956 P.2d 312 (1998).

The first three elements are plainly met here. Collier disputes the fourth because of the "disparity of relief" between the administrative hearing remedies and those available in this civil tort action. The Supreme Court has recognized that "disparity of relief may be so great that a party would be unlikely to have vigorously litigated the crucial issues in the first forum and so it would be unfair to preclude relitigation of the issues in a second forum." Christensen, 152 Wn.2d at 309. Further,

> [d]isparity of relief between what one can recover in the first action compared to what one can recover in the second action is not the gravamen of the decision whether to apply collateral estoppel to the

9

> findings of an administrative board. Rather, courts look to disparity of relief to determine whether sufficient incentive existed for the concerned party to litigate vigorously in the administrative hearing. Courts have reasoned that, if the amount a party can recover in an administrative proceeding is insignificant, the party is not likely to have litigated the crucial issues vigorously.

Reninger, 134 Wn.2d at 453.

A significant disparity between the available remedies arises, Collier argues, because the "prior action was purely administrative and addressed the suspension of her nursing license . . . [t]his tort action while admittedly based upon substantially the same facts addresses completely different issues, the administrative reinstatement of her license and the serious financial impact results from wrongful conduct she has experienced." Collier argues that her incentives between the administrative and civil claims differ to the same degree as in Sprague v. Spokane Valley Fire Dep't, 189 Wn.2d 858, 409 P.3d 160 (2018), and in Weaver v. City of Everett, 194 Wn.2d 464, 475-76, 450 P.3d 177 (2019).

In Sprague, a firefighter who had lost an employment appeal before a county administrative commission court, then brought a civil action against the fire department. 189 Wn.2d at 903. It is true that the Sprague plaintiff was seeking additional previously-unavailable damages for lost wages and benefits. However, they also sought additional kinds of relief unavailable in the administrative action: damages for a civil rights violation and a declaratory judgment invalidating fire department policy. Id. at 903. These arose from a constitutional (free speech) issue that the administrative agency was prevented from addressing by nature of its statutorily-limited jurisdiction. Id. at 901-02. The

mere availability of lost wages and benefits (arising as a function of additional time between the administrative decision and the civil claim) was *not* a decisive factor in Sprague but incident to other overriding factors such as public policy and questions of constitutional importance. Id. at 900 ("[M]ost particularly, [this civil case] differs because Sprague's underlying claim is a constitutional one for which we grant the Commission no deference.").

In Weaver, a firefighter filed an administrative claim for temporary disability for five weeks of lost wages incurred while he received treatment for melanoma. 194 Wn.2d at 475-76. Weaver's treating oncologist was not called to testify and the administrative law judge concluded that the City had rebutted the statutory presumption of occupational disease and affirmed the Department's denial of Weaver's claim. Id. at 469-70. Later, after new symptoms arose and a scan revealed that Weaver had developed a metastatic[2] cancer tumor in his brain, Weaver's treating oncologist estimated that Weaver had a 20-30 percent chance of surviving two more years and opined that the metastatic melanoma would likely cause his death. Id. at 470-71. Unable to continue working, Weaver then filed a permanent disability benefits claim. Id. at 471. "The total amount of pension benefits that Weaver sought was estimated at greater than $2 million: more than $5,000 per month, which his wife would continue to receive for the rest of her life to support their three minor children." Id. His claim for temporary disability thus "differed by an order of magnitude" with the incentives behind his

---

[2] Metastasis is a process by which cancer spreads from one part of the body to the other.

subsequent civil action claim for "continuing pension" permanent total disability. Id. at 475-76. The Weaver court concluded "that application of collateral estoppel would work an injustice because Weaver did not have sufficient motivation to fully and vigorously litigate the issue of whether his melanoma was an occupational disease at the temporary disability claim stage." Id. at 477.

Sprague and Weaver are distinguishable from the instant case. Respondent correctly identifies that, unlike Sprague, the issues litigated in this tort action do not present any new "unique constitutional questions that impact public policy." Instead, this action centers solely on the same issue of contract interpretation finalized in the previous administrative action. Unlike the litigant in Weaver, Collier had the same incentive in both matters: a finding that she did comply with the STID and should not have had her nursing license suspended.

Also, disparity in the types of relief available does not necessarily mean the application of estoppel works an injustice. Shoemaker v. City of Bremerton, 109 Wn.2d 504, 513, 745 P.2d 858 (1987). A civil service commission rejected Shoemaker's claim that he, a police captain, was demoted in bad faith and not for cause. Id. at 506. Shoemaker later filed a civil rights action in federal district court pursuant to 42 U.S.C. § 1983. Id. at 507. The federal district court "granted summary judgment against Shoemaker on the ground, in part, that the determination by the Commission that his demotion was not retaliatory was binding on the federal court under the doctrine of collateral estoppel." Id. Shoemaker appealed to the Ninth Circuit Court of Appeals, which certified to the Washington Supreme Court the question of whether Washington law affords

preclusive effect in such circumstances. Id. at 505. Our Supreme Court answered in the affirmative, Id. at 513, reasoning that '[w]hile the Commission could not have adjudicated the section 1983 claim, 28 U.S.C. § 1343, it may have decided an issue of fact that is common to both Shoemaker's petition for reinstatement before the Commission and to his section 1983 claim." Id. at 512. The Supreme Court also noted that the "fact that the issue determined is also a central element in the federal civil rights claim does not mean that giving preclusive effect to that determination is an improper application of claim preclusion or that the Commission has acted beyond its competence." Id. at 512-13. The court noted that "Shoemaker also made claims for emotional distress in the civil rights suit which could not have been awarded by the Commission, but this disparity, given the uncertainty of such recovery, is not as great as the disparity of relief" found in other cases. Id. at 513 (citing as an example Mack v. S. Bay Beer Distribs., Inc., 798 F.2d 1279 (9th Cir. 1986), abrogated on other grounds by Astoria Fed. Sav. & Loan Ass'n v. Solimino, 501 U.S. 104, 111 S. Ct. 2166, 115 L. Ed.2d 96 (1991)).

Collier presents no meaningful argument to support her assertion that a disparity of relief exists, much less that it would support a conclusion that collateral estoppel works an injustice here. She only generally alleges that the "wrongful conduct" caused a "financial impact" upon her. That wrongful conduct centers around the same underlying issue based on the same facts that she raised in her administrative hearing involving the same parties. Collateral

estoppel precludes her tort action.  The trial court did not err in granting respondents' summary judgment motion to dismiss with prejudice.[3]

Affirmed.

_Coburn, J._

WE CONCUR:

_Birk, J._           _Hazelrigg, ACJ_

---

[3] Because we affirm the dismissal on the basis of collateral estoppel, we need not reach respondents' other issues raised in their summary judgment motion.