

This opinion was
filed for record
at 8 a.m. on Oct. 17, 2019

_____ Deputy

for Susan L. Carlson
Supreme Court Clerk

IN THE SUPREME COURT OF THE STATE OF WASHINGTON

MICHAEL WEAVER, )
)
Respondent, )   No. 96189-1
)
v. )   En Banc
)
CITY OF EVERETT and STATE OF )   Filed __OCT 1 7 2019__
WASHINGTON, DEPARTMENT OF )
LABOR & INDUSTRIES, )
)
Petitioners. )
_____)

OWENS, J. — A firefighter contracted melanoma and filed a temporary

disability claim, which the Department of Labor and Industries (Department) denied,

finding that the melanoma was not work related. Later, the melanoma spread to the

firefighter's brain, and he filed a permanent disability claim, which the Department

denied as precluded by denial of the temporary disability claim. We are asked to

decide whether the equitable doctrines of collateral estoppel and res judicata properly

preclude the firefighter's permanent disability claim. We hold that collateral estoppel

does not apply because the doctrine would work an injustice in this situation, given

that the firefighter did not have sufficient incentive to fully and vigorously litigate the

1

temporary disability claim in light of the disparity of relief between the two claims. We likewise hold that res judicata does not apply because the two claims do not share identical subject matter, given that the permanent disability claim did not exist at the time of the temporary disability claim. Accordingly, we affirm the Court of Appeals.

## FACTS

Michael Weaver worked as a firefighter paramedic for the City of Everett (City) from 1996 until 2014, when malignant metastatic melanoma halted his ability to work.

### I.     Temporary Disability Claim

Weaver was originally diagnosed with melanoma in 2011, when an irregular mole on his upper back was found to be cancerous. Weaver underwent surgery, which he thought "cured" his melanoma. Administrative Record (AR) at 47.

Believing that his melanoma was work related, Weaver filed an application with the Department for temporary disability benefits for the five weeks of work that he missed during surgery and recovery. His claim consisted solely of lost wages worth approximately $10,000. The Department initially granted Weaver's claim, but the City protested the order and hired two doctors specializing in cancer treatment and dermatology to perform independent medical examinations of Weaver. The Department reversed its initial order, concluding that Weaver's "condition is not an occupational disease." AR at 278. Weaver retained counsel to appeal the Department's denial to the Industrial Insurance Appeals Board (Board).

Weaver's counsel purportedly did not explain the appeal process to Weaver or prepare him for the hearing before an administrative law judge (ALJ) and arrived 90 minutes late to the hearing. Weaver's sole expert witness was a family physician who had not treated, examined, or met Weaver. The physician opined in deposition to an affirmative causal correlation between firefighters' occupational chemical exposure and melanoma. Both doctors whom the City had hired to examine Weaver opined that Weaver's cancer was likely due to sun exposure as a child rather than occupational exposure as a firefighter. Weaver's treating oncologist was not called to testify.

The ALJ concluded that the City had rebutted the statutory presumption of occupational disease and affirmed the Department's denial of Weaver's claim. The Board adopted the ALJ's order and denied Weaver's petition for review. Weaver's counsel withdrew from representation, and Weaver filed a pro se appeal in superior court. Months later, lacking professional assistance or knowledge of how to pursue the appeal, Weaver signed an agreed order of dismissal prepared by the City.

II.     Permanent Disability Claim

In January 2014, Weaver began having trouble recalling words. A brain scan revealed a tumor, which was confirmed to be metastatic melanoma. Weaver does not dispute that the brain tumor was a metastasis of the same melanoma at issue in his temporary disability claim. Weaver's treating oncologist estimated in 2015 that Weaver had a 20-30 percent chance of surviving two more years and opined that the metastatic

melanoma would likely cause his death.

Unable to continue working, Weaver filed a permanent disability benefits claim. The total amount of pension benefits that Weaver sought was estimated at greater than $2 million: more than $5,000 per month, which his wife would continue to receive for the rest of her life to support their three minor children. The Department rejected Weaver's claim, reasoning that the "claim was filed for the same cancer that was denied previously." AR at 270. Assisted by new counsel, Weaver appealed to the Board. The City moved for summary judgment, arguing that Weaver's claim was precluded by collateral estoppel and res judicata. At a hearing before an ALJ, Weaver's counsel introduced declarations from Weaver's treating oncologist and a physician specializing in occupational medicine among firefighters: both opined that Weaver's sun exposure as a firefighter was a cause of his melanoma. The ALJ affirmed denial of Weaver's claim and granted the City's motion for summary judgment, concluding that collateral estoppel applied as a matter of law. The Board adopted the ALJ's order and denied Weaver's petition for review.

Weaver appealed to the superior court, which affirmed the Board's order. Weaver then appealed to the Court of Appeals, which reversed, holding that neither collateral estoppel nor res judicata applied because preclusion would work an injustice and the subject matter of the two claims was not identical. *Weaver v. City of Everett*, 4 Wn. App. 2d 303, 421 P.3d 1013 (2018). The City and the Department each petitioned

4

this court for review, which was granted. *Weaver v. City of Everett*, 192 Wn.2d 1001 (2018).

## ISSUES

I. Does collateral estoppel preclude the issue of whether Weaver's melanoma is an occupational disease for purposes of his permanent disability claim?

II. Does res judicata preclude Weaver's permanent disability claim?

## ANALYSIS

The Industrial Insurance Act (Act), Title 51 RCW, governs workers' compensation cases, which we review in the same manner as other civil cases. RCW 51.52.140; RCW 34.05.030(2)(a). We review summary judgment orders de novo, viewing all facts and reasonable inferences in the light most favorable to the nonmoving party. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c).

The Act provides the sole avenue for filing workers' compensation claims in Washington. RCW 51.04.010. Under the Act, an "occupational disease" is a "disease or infection [that] arises naturally and proximately out of employment." RCW 51.08.140. Firefighters are statutorily entitled to a prima facie presumption that certain conditions, including melanoma, are occupational diseases. RCW 51.32.185(1)(a), (3). The presumption may be rebutted by a preponderance of the evidence. RCW 51.32.185(1)(c). We have observed that "the guiding principle in

5

construing provisions of the Industrial Insurance Act is that the Act is . . . to be liberally construed . . . with doubts resolved in favor of the worker." *Dennis v. Dep't of Labor & Indus.*, 109 Wn.2d 467, 470, 745 P.2d 1295 (1987).

Here, the Board concluded that as to Weaver's initial temporary disability claim for melanoma, the City overcame the statutory presumption of occupational disease. The City and the Department argue that Weaver's subsequent permanent disability claim is accordingly precluded based on collateral estoppel and res judicata.

Collateral estoppel and res judicata are equitable doctrines that preclude relitigation of already determined causes. *Bordeaux v. Ingersoll Rand Co.*, 71 Wn.2d 392, 395-96, 429 P.2d 207 (1967). Both doctrines share a common goal of judicial finality and are intended to curtail multiplicity of actions, prevent harassment in the courts, and promote judicial economy. *State v. Dupard*, 93 Wn.2d 268, 272, 609 P.2d 961 (1980). The two doctrines are distinguishable in scope. Collateral estoppel, or issue preclusion, bars relitigation of particular *issues* decided in a prior proceeding. *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 306, 96 P.3d 957 (2004). Res judicata, or claim preclusion, bars litigation of *claims* that were brought or might have been brought in a prior proceeding. *Loveridge v. Fred Meyer, Inc.*, 125 Wn.2d 759, 763, 887 P.2d 898 (1995). Whether collateral estoppel or res judicata apply are questions of law that we review de novo. *Christensen*, 152 Wn.2d at 305; *Lynn v. Dep't of Labor and Indus.*, 130 Wn. App. 829, 837, 125 P.3d 202 (2005).

I.     Collateral Estoppel

We first consider if collateral estoppel properly precludes adjudication of the issue of whether Weaver's melanoma is an occupational disease for purposes of his permanent disability claim. We conclude that the substantial disparity of relief between Weaver's temporary and permanent disability claims kept Weaver from fully and vigorously litigating the issue at the temporary disability claim stage. Therefore, because applying the doctrine in this instance would work an injustice and contravene public policy, we hold that collateral estoppel does not apply.

"Collateral estoppel" "'means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit.'" *Dupard*, 93 Wn.2d at 273 (quoting *Ashe v. Swenson*, 397 U.S. 436, 443, 90 S. Ct. 1189, 25 L. Ed. 2d 469 (1970)). For collateral estoppel to apply, the party against whom the doctrine is asserted must have had a full and fair opportunity to litigate its case in a prior proceeding. *Hanson v. City of Snohomish*, 121 Wn.2d 552, 561, 852 P.2d 295 (1993). A party asserting collateral estoppel must establish four elements:

> (1) the issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of collateral estoppel does not work an injustice on the party against whom it is applied.

*Christensen*, 152 Wn.2d at 307. Weaver concedes that the first three elements are

met. Therefore, our analysis turns on the injustice element.

A.    *Injustice*

To determine whether collateral estoppel will work an injustice, we ask whether the party against whom the doctrine is asserted had "sufficient motivation for a full and vigorous litigation of the issue" in a prior proceeding. *Hadley v. Maxwell*, 144 Wn.2d 306, 315, 27 P.3d 600 (2001). While the injustice element is "generally concerned with procedural, not substantive irregularity," we have recognized that "disparity of relief [between two proceedings] may be so great that a party would be unlikely to have vigorously litigated the crucial issues in the first forum and so it would be unfair to preclude relitigation of the issues in a second forum." *Christensen*, 152 Wn.2d at 309. Where a significant disparity of relief exists, the injustice element militates against application of collateral estoppel. *Hadley*, 144 Wn.2d at 315. "Collateral estoppel is, in the end, an equitable doctrine that will not be applied mechanically to work an injustice." *Id.*

In *Hadley*, we held that collateral estoppel would work an injustice when a defendant in a personal injury action was previously found to have committed a minor traffic infraction associated with the incident, concluding that the defendant's "incentive to litigate [the traffic infraction] was low." *Id.* at 312. In *Sprague v. Spokane Valley Fire Dep't*, 189 Wn.2d 858, 903, 409 P.3d 160 (2018), we held that collateral estoppel would work an injustice "because of the disparity of relief"

8

between the plaintiff's prior employment appeal before a county administrative commission court, which he lost, and his subsequent court action: the commission had the power to order only reinstatement, whereas in the court action, the plaintiff sought injunctive relief, declaratory judgment, special damages, and punitive damages. We also observed that collateral estoppel is inappropriate where "the disparity between the reliefs available creates the risk that 'litigants [may] forgo their administrative remedies for fear of preclusion in other, more substantial claims.'" *Id.* (alteration in original) (quoting *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 513, 745 P.2d 858 (1987)).

By contrast, in *Reninger v. Department of Corrections*, 134 Wn.2d 437, 951 P.2d 782 (1998), we held that collateral estoppel would not work an injustice when the plaintiffs attempted to bring an employment action in court after losing their appeal regarding the same matter before an administrative tribunal. We concluded that "[t]here was no disparity of relief" between the two actions because the administrative tribunal had the power to order the same recovery as the superior court. *Id.* at 453 (noting that "a party may not have had an adequate opportunity to litigate when 'the amount in controversy in the first action may have been so small in relation to the amount in controversy in the second that preclusion would be plainly unfair'" (quoting RESTATEMENT (SECOND) OF JUDGMENTS § 28(5) comment j (AM. LAW INST. 1982)).

Here, the disparity of relief between Weaver's temporary disability claim and his permanent disability claim was vast: less than $10,000 in lost wages was at stake in the former versus upwards of $2 million in continuing pension disability in the latter. While the Board had the power to order disability benefits in both actions, the actual amounts in controversy differed by an order of magnitude. Furthermore, Weaver argues that the expense of retaining expert witnesses necessary to fully and vigorously litigate his temporary disability claim and combat the City's experts would have exceeded the amount recoverable in that action.[1] Though a firefighter is entitled to reimbursement of costs if he or she prevails on appeal of a disability benefits claim, RCW 51.32.185(9), the potential loss may be too substantial to warrant such risk where costs are prohibitive. Weaver's incentive to litigate the issue of whether his melanoma was an occupational disease was comparatively low in his temporary disability claim, commensurate with the relief at stake in that action.

The City and the Department characterize Weaver's temporary disability claim as a "claim allowance" proceeding, which "a worker has every incentive to fully litigate" because it operates as "the gateway to all benefits." Suppl. Br. of Dep't and City at 22. At that phase, they argue, the "threshold question of whether he had an occupational disease" was decided for purposes of that claim, as well as any potential

---

[1] Weaver alleges that in the appeal of his permanent disability claim, the oncology expert alone was paid $19,000, though that figure is not reflected in the record.

10

future claims flowing from the same ailment. *Id.* While that may be true in theory, the Act nowhere uses the term "claim allowance" and provides scant notice to workers that a temporary disability claim carries such stakes. *See e.g.,* RCW 51.32.185(9) (stating that firefighters may recover costs incurred on appeal if "the final decision allows the claim *for benefits*" (emphasis added)). In support of their proposition, the City and the Department cite RCW 51.32.160, which provides for compensation readjustment in the event of aggravation of a disability. However, Weaver testified that he believed his melanoma was "cured" after undergoing surgery to remove the cancerous tissue from his back, which further indicates that he did not have sufficient incentive to litigate the issue of whether his melanoma was an occupational disease, especially for purposes of a then-unanticipated permanent disability claim. AR at 47.

Viewing all facts and inferences in favor of Weaver as the nonmoving party, we conclude that application of collateral estoppel would work an injustice in this case because Weaver did not have sufficient motivation to fully and vigorously litigate the issue of whether his melanoma was an occupational disease at the temporary disability claim stage. As in *Sprague,* the disparity of relief between Weaver's two claims was dramatic, which is reason enough to conclude that preclusion would be unjust. That conclusion is reinforced by the facts that Weaver believed his melanoma was fully resolved at the time of his temporary disability

11

claim, the counsel he retained to assist him in appealing the order did not adequately prepare him, and the cost of fully and vigorously litigating his claim outweighed the potential risk of loss. While Weaver's temporary disability claim was worth more than the traffic infraction fine in *Hadley*, this is nonetheless a case where "'the amount in controversy in the first action [was] so small in relation to the amount in controversy in the second that preclusion would be plainly unfair.'" *Reninger*, 134 Wn.2d at 453 (quoting RESTATEMENT § 28(5) comment j (1982)). Moreover, applying collateral estoppel in this instance would create a perverse incentive, counter to the express intent of the Act, for Weaver and workers in his position to forgo temporary disability claims "'for fear of preclusion in other, more substantial claims.'" *Sprague*, 189 Wn.2d at 903 (quoting *Shoemaker*, 109 Wn.2d at 513).

B.    *Policy Considerations*

The standard governing application of collateral estoppel to prior administrative determinations also weighs against precluding Weaver's permanent disability claim because applying collateral estoppel would contravene express public policies memorialized in the Act. We consider three factors in determining whether collateral estoppel ought to apply to decisions of administrative agencies:

"(1) whether the agency acting within its competence made a factual decision;

(2) agency and court procedural differences; and (3) policy considerations." *Dupard*, 93 Wn.2d at 275. Here, the first two factors are met because an ALJ made a factual

decision, which the Board adopted, and the Board appeal was procedurally similar to a court hearing, including the use of motions, introduction of witness testimony, and adherence to evidentiary standards. However, the third factor pertaining to policy considerations is not met.

"Policy arguments have been often the deciding factor when collateral estoppel is based upon prior administrative determination. The doctrine may be qualified or rejected when its application would contravene public policy." *Id.* at 275-76 (internal citation omitted). In *Dupard*, we concluded that public policy considerations dictated rejection of collaterally estopping an issue previously determined by a parole board because the issue was more appropriately addressed to the criminal justice system. *Id.* at 276. Likewise in *Sprague*, we concluded that public policy considerations cut against collaterally estopping an issue previously determined by a county administrative commission because the issue implicated important constitutional questions. 189 Wn.2d at 904.

Here, the statutory presumption of occupational disease in firefighters memorializes an unequivocal public policy of erring on the side of finding that among the class of workers into which Weaver falls, melanoma is presumed to arise naturally and proximately out of employment. RCW 51.32.185(1)(a), (3). More broadly, the Act was intended to provide "sure and certain relief for workers, injured in their work, and their families and dependents . . . regardless of questions of fault." RCW

13

51.04.010. Finally, the Act is to be liberally construed "with doubts resolved in favor of the worker." *Dennis*, 109 Wn.2d at 470.

Altogether, policy considerations militate against the application of collateral estoppel to Weaver's permanent disability claim. Though the Board found at the temporary disability claim stage that the City rebutted by a preponderance of the evidence the presumption that Weaver's melanoma was an occupational disease, that conclusion should not automatically dictate the outcome of Weaver's permanent disability claim. As in *Dupard* and *Sprague*, public policy indicates that the issue of whether Weaver's melanoma is an occupational disease merits fresh adjudication notwithstanding a prior administrative determination. Moreover, as noted, applying collateral estoppel in this instance would contravene the Act's policy of providing sure and certain relief to workers by disincentivizing them from filing initial, minor occupational disease claims due to concerns that denial of those claims would preclude potential, long-term, major claims involving the same disease. *See Sprague*, 189 Wn.2d at 903.

Notably, considerable overlap exists between the injustice element of the traditional collateral estoppel analysis and the policy factor of the collateral estoppel analysis unique to prior administrative determinations. "[T]he injustice factor 'recognizes the significant role of public policy.'" *Christensen*, 152 Wn.2d at 309 (quoting *State v. Vasquez*, 148 Wn.2d 303, 309, 59 P.3d 648 (2002)). Therefore, here,

as in *Sprague*, "whether one considers this truly a matter of 'injustice' or a matter of 'public policy,' it supports a finding that collateral estoppel should not apply." 189 Wn.2d at 903 n.29.

In sum, we conclude that application of collateral estoppel in this instance would work an injustice and contravene public policy. We therefore hold that the doctrine does not preclude the issue of whether Weaver's melanoma is an occupational disease for purposes of his permanent disability claim.

II.     Res Judicata

Next we turn to the issue of whether res judicata applies to preclude Weaver's permanent disability claim in light of the Board's denial of his prior temporary disability claim. We conclude that because Weaver's permanent disability claim was not available at the time of his temporary disability claim, the subject matter of the two claims is not the same. Lacking identity of subject matter, we hold that res judicata does not apply to preclude Weaver's permanent disability claim.

Res judicata precludes relitigation of an entire claim when a prior proceeding involving the same parties and issues culminated in a judgment on the merits. *Bordeaux*, 71 Wn.2d at 396; *Hisle*, 151 Wn.2d at 865. A party seeking to apply res judicata must establish four elements as between a prior action and a subsequent challenged action: "concurrence of identity . . . (1) of subject-matter; (2) of cause of action; (3) of persons and parties; and (4) in the quality of the persons for or against

whom the claim is made." *N. Pac. Ry. Co. v. Snohomish County*, 101 Wash. 686, 688, 172 P. 878 (1918). Here, the third and fourth elements are met because the parties are identical and identically situated in both claims. Weaver does not contest the second element, so we accept for purposes of analysis that both claims involve the single cause of action enabled under the Act: compensation for work-related illness or injury. The parties' dispute pertaining to res judicata is thus limited to whether the claims share identity of subject matter.

There is limited case law defining when the subject matter of related cases differs. *Hayes v. City of Seattle*, 131 Wn.2d 706, 712, 934 P.2d 1179 (1997). However, we have repeatedly held that "the same subject matter is not necessarily implicated in cases involving the same facts." *Hisle*, 151 Wn.2d at 866 (citing *Hayes*, 131 Wn.2d at 712; *Mellor v. Chamberlin*, 100 Wn.2d 643, 646, 673 P.2d 610 (1983)). Specifically, a "cause of action which did not exist at the time of a former judgment could not have been the subject-matter of the action sustaining that judgment." *Harsin v. Oman*, 68 Wash. 281, 284, 123 P. 1 (1912).

In *Mellor*, we held that a claim for breach of a covenant of warranty was not precluded by a prior claim for misrepresentation as between the same plaintiff-purchaser and defendant-seller over the sale of the same parcel of real property. 100 Wn.2d at 647. "Although both lawsuits arose out of the same transaction . . . , their subject matter differed" because at the time of the misrepresentation suit, the plaintiff-

16

purchaser had not yet been injured due to the alleged breach of covenant. *Id.* at 646.
The breach of covenant claim was "not ripe" at that time, therefore res judicata did not
preclude the plaintiff-purchaser from raising it in a separate, later action. *Id.* at 647.

Here, the parties essentially dispute the substantive character of Weaver's
claims. Weaver argues that because he could not have brought his permanent
disability claim at the time of his temporary disability claim, the two claims cannot
share the same subject matter. He points out that he "could not have obtained an
award of permanent disability benefits in the first claim because the applicable
statutes and case law would not have allowed him to recover for prospective
disability." Suppl. Br. of Resp't at 12. On the other hand, the City and the
Department argue that Weaver's temporary and permanent disability claims both
turned on the common subject of whether his melanoma was an occupational disease.
They emphasize that the Board "ruled only on whether to allow his occupational
disease claim. It did not reach what benefits to authorize." Suppl. Br. of Dep't and
City at 14. However, unlike collateral estoppel, which precludes relitigation of
specific issues, res judicata precludes entire claims when those claims either were
brought or could have been brought in a prior action. Having already concluded that
the issue of whether Weaver's melanoma was an occupational disease is not
collaterally estopped for purposes of his permanent disability claim, the res judicata
analysis asks us to decide whether his permanent disability claim shares the same

17

"subject matter" as his temporary disability claim and is thus precluded as a whole.

Viewing all facts and inferences in favor of Weaver as the nonmoving party, we conclude that the subject matters of Weaver's two claims are distinct because his permanent disability claim did not exist and could not have been brought at the time of his temporary disability claim. Weaver's situation is like that of the plaintiff-purchaser in *Mellor*, who filed suit believing at the time that misrepresentation was the extent of injury but later discovered a breach of warranty and was able to separately maintain that claim because it was not previously ripe. Here, Weaver filed his temporary disability claim, believing at the time that he was "cured" and that $10,000 in lost wages would be the extent of his melanoma-related claims, but he later discovered that the cancer had metastasized to his brain. AR at 47. He should be able to separately maintain the permanent disability claim because it was not previously ripe. At the time of his temporary disability claim, Weaver's permanent disability claim "did not exist," therefore the permanent disability claim "could not have been the subject-matter" of his temporary disability claim. *Harsin*, 68 Wash. at 284. Because the two claims do not share identity of subject matter, at least one element of res judicata is not met. Accordingly, we hold that res judicata does not apply in this instance.

We are also mindful that res judicata remains an equitable, common law doctrine. Like its sister doctrine, collateral estoppel, "res judicata . . . is not to be

18

applied so rigidly as to defeat the ends of justice, or to work an injustice." *Henderson v. Bardahl Int'l Corp.*, 72 Wn.2d 109, 119, 431 P.2d 961 (1967). Here, application of res judicata would work an injustice because it would contravene clear public policy memorialized in the Act favoring relief from work-related illnesses and injuries for workers generally and firefighters in particular. Our holding thus accords with the Act, the operative case law, and the spirit of the doctrine of res judicata.

Finally, in *Spivey v. City of Bellevue*, 187 Wn.2d 716, 741, 389 P.3d 504 (2017), we observed that the Act's cost recoupment provision pertaining to firefighters is broader than the Act's provision governing attorney fees generally. In that case, we held that a firefighter was entitled to costs and fees incurred in litigating before the Board when the firefighter ultimately prevailed on appeal, even though he had not prevailed before the Board. *Id.* at 739-40. Here, as in *Spivey*, we hold that if Weaver prevails on remand, he would be entitled to attorney fees associated with all phases of his appeal.

## CONCLUSION

Viewing the facts in the light most favorable to Weaver, we hold that as a matter of law, collateral estoppel does not apply to preclude the issue of whether Weaver's melanoma was an occupational disease for purposes of his permanent disability claim because application of the doctrine in this instance would work an injustice and contravene public policy. We further hold that as a matter of law, res

19

judicata does not apply to preclude his permanent disability claim because the two claims do not share the same subject matter. While collateral estoppel and res judicata dictate that at common law, claimants are "entitled to one bite of the apple," *Reninger*, 134 Wn.2d at 454, applying either doctrine here would be an apples-to-oranges application of common law doctrines to statutory claims, which would result in a "distasteful fruit salad of injustice." *Weaver*, 4 Wn. App. 2d at 309. Accordingly, we affirm the Court of Appeals.

_____ Owens, J.

WE CONCUR:

_____ Fairhurst, C.J.

_____ Johnson, J.

_____ Madsen, J.

_____ Stephens, J.

_____ Wiggins, J.

_____ González, J.

_____ Gordon McCloud, J.

_____ Yu, J.