IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| STEVEN BAGOT,<br><br>        Respondent,<br><br>        v.<br><br>SMRB, LLC, a Washington Limited Liability Company d.b.a. GREEN ACRE PHARMS; and ROBERT RUSSELL,<br><br>        Petitioners,<br><br><br>RENEWABLE TECHNOLOGIES SOLUTION, INC., a Nevada Corporation; GREEN ACRES PHARMS, LLC, a Washington Limited Liability Company; and GUY GRIFFITHE,<br><br>        Defendants. | No. 84440-7-I (consolidated with No. 84905-1-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

CHUNG, J. — Steven Bagot sued Roger Russell and others in Skagit County, alleging breach of contract, fraud, misrepresentation, civil conspiracy, and other claims related to several payments he made to invest in a cannabis operation. The parties settled and stipulated to dismissal with prejudice. Bagot then filed another lawsuit, this time in King County, against the same parties alleging the same causes of action and an additional claim under the Washington Securities Act. Except for the Securities Act violation, the trial court granted summary judgment dismissing all claims on the grounds of claim preclusion.

Bagot and Russell each filed motions for discretionary review of the court's summary judgment rulings based on the claim preclusion doctrine. A commissioner of this court granted review only as to Russell's motion, which sought review of the trial court's denial of summary judgment dismissal of the Securities Act claim. We conclude the trial court erred by denying summary judgment on the Securities Act claim and reverse.

FACTS

Robert Russell and his wife formed SMRB, LLC in 2013 and were its sole members. In 2015, SMRB[1] received a Washington state license to produce and process cannabis at a facility in Anacortes, Washington. After SMRB began operating, Russell determined the company needed a larger space and began exploring sources of funding. Guy Griffithe and his company Renewable Technologies Solutions, Inc. (RTSI) expressed interest in investing.[2] Russell and Griffithe entered an agreement in which RTSI paid $1.5 million to purchase 49 percent of the net profits distributed to Russell by SMRB. The agreement expressly provided that RTSI did not acquire an ownership interest and would not be a shareholder in SMRB. The agreement acknowledged that RTSI intended to

---

[1] SMRB also has a registered d.b.a. of "Green Acre Pharms."

[2] According to Griffithe, in late 2016 or early 2017, he converted the membership interests in RTSI's profit rights into membership interests in a Nevada LLC called Green Acres Pharms, with the sole function of serving "as a vehicle for the sale of profit rights and the distribution of profits to the holders of those rights." The record is inconsistent as to whether Griffithe's entity is Green Acres Pharms or Green Acre Pharms. Griffithe's Green Acres Pharms LLC is a separate entity from SMRB's Green Acre Pharms. Russell was never a member of Griffithe's LLC and has never acted on its behalf.

2

sell portions of this "dividend interest" in order to fund the purchase. Russell and SMRB would have no role in these sales.

In March 2017, Steven Bagot, a California resident, entered into a "subscription agreement" with RTSI to purchase four percent of the company for $450,000. Under the subscription agreement, Bagot would receive four percent of the net dividend interest paid to RTSI by SMRB. On October 10, 2017, Bagot signed a promissory note agreeing to provide Green Acres Pharms,[3] Griffithe, and Russell with $100,000, and they agreed to repay the principal within 90 days.[4] The note further provides that interest is payable "on the unpaid principal at the rate of 10% for 90 calendar days, calculated monthly not in advance," and "for every month thereafter there will be a $4,500.00 a month penalty or $150.00 per day." The promissory note included personal guarantees by Griffithe and Russell. However, only Bagot and Griffithe, for himself and on behalf of Green Acres Pharms, signed the note.

Bagot followed this promissory note with a letter of understanding (LOU) signed by Griffithe on November 26, 2017. The LOU confirmed that Bagot intended to purchase an additional two percent interest in RTSI for $200,000, increasing his total ownership to six percent "representing 6% of the net income or sale of the business of Green Acres Pharm and SMRB, to be paid quarterly." The LOU further provided that a portion of the investment[5] was to be used only

---

[3] The promissory note does not specify whether the Green Acres Pharms named is the d.b.a. of SMRB or Griffithe's LLC. While SMRB's entity is named Green Acre Pharms, the record confusingly refers to it as Green Acres Pharms.

[4] In one place, the note misstates the principal amount as "$100,000,00.00 USD."

[5] Paragraph 2 of the LOU states that "the $200,000 being invested will be used only for the completion of the cryogenic oil processing machine purchase," while paragraph 3 states "[t]he overall intent is for $100,000 of the $200,000 investment be used toward the cryogenic oil machine

for the completion of a cryogenic oil processing machine purchase, and if sufficient funds were not raised to complete the purchase within two weeks "that deal will be considered 'dead' and all monies returned." Additionally, after purchase of the equipment, Bagot was to be repaid under the terms of the promissory note: "The overall intent is for $100,000 of the $200,000 investment be used toward the cryogenic oil machine purchase, and the other $100,000 be used to repay the October 10, 2017 promissory note." Within days of the LOU, Bagot and Griffithe entered into a second subscription agreement for purchase of the additional six percent for $200,000.

Bagot did not receive repayment for the money loaned under the terms of the promissory note when it became due on January 8. RTSI also failed to make regular disbursements or provide accounting related to Bagot's six percent interest. Bagot retained counsel, who sent a notice of default with a demand for payment on the promissory note in January 2018. In April 2018, after having received no response to his demand, Bagot filed suit against SMRB d.b.a. Green Acres Pharms, Russell, Griffithe, RTSI, and Green Acres Pharms in Skagit County Superior Court. Bagot raised ten claims: breach of contract, unjust enrichment, fraud, negligent misrepresentation, conversion, promissory estoppel, civil conspiracy, breach of fiduciary duty, breach of good faith and fair dealing, and violation of Washington's Limited Liability Company (LLC) Act records disclosure requirements.

---

purchase . . . ." Reading the LOU as a whole, paragraph 2 appears to contain a scrivener's error and should state that $100,000 is for the machine purchase.

The parties entered into a settlement agreement on July 23, 2018. Russell, Griffithe, and the defendant companies agreed to pay $139,887.50 to Bagot. In turn, Bagot agreed to dismiss the claims with prejudice. Specifically, the settlement agreement provided that Bagot

> releases, acquits and discharges Defendants from all claims and causes of action, whether based on contract, tort, statutory or other legal or equitable theory of recovery, arising out of Defendant's obligation to pay Plaintiff pursuant to the terms of the Note signed on or about October 10, 2017. This release shall not release any obligation or right created by this Agreement.

Additionally, the settlement agreement specified, "This release shall not release nor affect any other obligation or right existing between Plaintiff and Defendants, including but not limited to the Letter of Understanding signed by and between Plaintiffs and Defendants on or about November 24, 2017."

On August 24, 2018, Bagot's counsel sent a letter to the attorney representing SMRB, RTSI, and both Green Acres Pharms entities "in an effort to find an equitable solution to these ongoing issues between our clients and to avoid litigation." The letter detailed the companies' failure to use the investment for the cryogenic oil processing equipment as promised, violations of the Washington Securities Act, as well as the lack of quarterly disbursements since December 2017 and accounting of the business since September 2017. Bagot's counsel expressed that he was willing to forego a lawsuit if they agreed to repay the $650,000 investment, including an immediate repayment of the $200,000 that was not properly used under the terms of the LOU. Counsel concluded with a warning that failure to provide a response within 72 hours would result in service of a summons and complaint no later than September 21, 2018.

On September 7, 2018, in accordance with the settlement agreement,[6] the parties entered a stipulation for dismissal with the Skagit County Superior Court. The agreed stipulation stated that the action "is voluntarily dismissed with prejudice and without costs, this matter having been fully settled and compromised between Plaintiff and Defendant[s], pursuant to CR 41(a)(1)(A)." On September 10, 2018, the court entered an order dismissing all claims with prejudice based on the stipulation between the parties.

In January 2019, Bagot filed a second lawsuit against SMRB, Green Acres Pharms, RTSI, Russell, and Griffithe, this time in King County Superior Court. Bagot again raised claims of breach of contract, unjust enrichment, fraud, negligent misrepresentation, conversion, promissory estoppel, civil conspiracy, breach of fiduciary duty, breach of good faith and fair dealing, and violation of Washington's LLC Act records disclosure requirements, with an additional claim for violation of the Washington Securities Act.

The action was stayed from January 2020 to March 2021 due to RTSI's bankruptcy filing. After the stay was lifted, the parties engaged in extensive motions practice. Bagot, Griffithe, and Russell/SMRB all filed motions for summary judgment. The court held two days of oral arguments in June 2021. On September 10, the court denied Bagot's and Griffithe's motions and continued the hearing on Russell/SMRB's summary judgment motion until October.

---

[6] Bagot agreed to dismiss the claims with prejudice within five days of receiving the first monthly payment, which, according to a schedule attached to the settlement agreement, was due on August 3, 2018.

In September 2021, Russell/SMRB and Griffithe each filed second motions for summary judgment that, for the first time, argued that the claims in Bagot's King County lawsuit were precluded by res judicata due to the settlement of the Skagit County case. Bagot responded to the motions for summary judgment, claiming that defendants failed to demonstrate that the King County and Skagit County lawsuits shared the same causes of action and subject matter as required for claim preclusion. In October 2021, the trial court heard argument on Russell/SMRB's original summary judgment motion and the defendants' motions based on claim preclusion.

On November 19, 2021, the trial court issued two separate orders on the summary judgment motions. One order was based on Russell/SMRB's original motion for summary judgment filed on May 7, 2021, and granted summary judgment dismissal of Bagot's claims of breach of contract, breach of good faith and fair dealing, promissory estoppel, breach of fiduciary duty, conversion, and violation of the Washington LLC Act. That order denied Russell/SMRB's request for summary judgment on the claims of fraud, negligent misrepresentation, civil conspiracy, unjust enrichment, and violation of Washington Securities Act. The second order granted partial summary judgment and dismissal of all of Bagot's claims against Russell/SMRB and Griffithe based on the application of res judicata except unjust enrichment, and denied summary judgment on Bagot's claim for violation of the Washington Securities Act.

Bagot and Russell/SMRB both filed motions for reconsideration. Russell/SMRB requested reconsideration of the denial of summary judgment on

the Securities Act claim. Russell/SMRB also sought clarification as to the court's ruling on the unjust enrichment claim, which had been omitted from the order on summary judgment based on res judicata. Bagot sought reconsideration of the dismissal of the remaining claims and also claimed that the defendants had waived res judicata by failing to plead the affirmative defense in their answer and pursuing the case for more than two years before seeking dismissal on this basis.

In an order issued February 1, 2022, the trial court denied Russell/SMRB's motion for reconsideration on the Securities Act claim, but clarified that the unjust enrichment claim was dismissed under res judicata. In another order issued the same day, the trial court requested that Russell/SMRB provide responsive briefing on the issue of waiver of the res judicata defense.

During a status conference in April 2022, Russell/SMRB requested leave to file a renewed motion for summary judgment based on new evidence. Griffithe had discovered that Bagot's counsel had included him on an April 2018 e-mail to another person involved with the investment scheme. Sent the day Bagot filed the lawsuit in Skagit County Superior Court, the e-mail stated "I am going after you and the 502 company that lured [Bagot] to invest. You and your colleagues have committed securities fraud." The trial court granted Russell/SMRB's request to file this renewed motion for summary judgment and dismissal of the Securities Act claim on the grounds of res judicata. The court also allowed Bagot to file a motion for summary judgment on the Securities Act claim. Griffithe joined

Russell/SMRB's motion and their response to Bagot's motion. The court subsequently denied the cross-motions for summary judgment.

Russell/SMRB filed a motion for discretionary review of the denial of the renewed motion for summary judgment on the Securities Act claim. Bagot requested discretionary review of the court's order granting summary judgment dismissal of all claims except for the Securities Act claim.[7] The two motions for discretionary review were consolidated. A commissioner of this court granted discretionary review of the trial court's denial of the summary judgment on the Securities Act claim but denied Bagot's request for review of the summary judgment dismissal of his other claims.[8] Griffithe is not a party to this appeal.

## DISCUSSION

The trial court granted summary judgment dismissing Bagot's claims against Russell/SMRB except for the claim based on the Securities Act.[9] We review orders on summary judgment de novo. Kim v. Lakeside Adult Fam. Home, 185 Wn.2d 532, 547, 374 P.3d 121 (2016). We construe evidence and reasonable inferences in the light most favorable to the nonmoving party. Id.

---

[7] Bagot also moved for discretionary review of the trial court's denial of his motion seeking summary judgment in his favor on the Securities Act claim. A commissioner of this court denied discretionary review.

[8] While the commissioner determined that Bagot's request for review of dismissal of his other claims under the res judicata doctrine did not meet any of the criteria for discretionary review, for the purposes of judicial economy, allowed Bagot to provide briefing on the applicability of res judicata to his other claims for consideration as appropriate.

[9] Bagot repeatedly refers to Russell's renewed motion for summary judgment as defendants' second motion for reconsideration of the partial summary judgment on res judicata. Bagot cites the abuse of discretion standard of review that applies to review of a trial court's motion for reconsideration rather than the de novo standard that applies to review of summary judgment decisions. According to the record, Russell requested leave to file a new motion for summary judgment, which the court granted. The motion was brought outside the 10-day filing period for a motion for reconsideration. CR 59. Regardless of the procedural posture, appellate courts review application of the claim preclusion doctrine de novo. Weaver v. City of Everett, 194 Wn.2d 464, 473, 450 P.3d 177 (2019).

Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Folsom v. Burger King, 135 Wn.2d 658, 663, 958 P.2d 301 (1998) (citing CR 56(c)).

The summary judgment decisions at issue were based on res judicata. The term "res judicata" is often referred to as claim preclusion and refers to restrictions on relitigating the same claim or cause of action.[10] 14A DOUGLAS J. ENDE, WASHINGTON PRACTICE: CIVIL PROCEDURE § 35:20, at 552 (3d ed. 2018). Claim preclusion is an equitable remedy that precludes relitigation of already determined causes in the interest of judicial finality and economy. Weaver v. City of Everett, 194 Wn.2d 464, 472-73, 450 P.3d 177 (2019).

Claim preclusion prevents relitigation of an entire claim when a prior proceeding involving the same parties and issues culminated in a judgment on the merits. Id. at 480. The party asserting claim preclusion has the burden of proof to establish that the prior action and the challenged action have "concurrence of identity" in four areas: (1) subject-matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made. Id. All four elements must be satisfied to establish claim preclusion. Hisle v. Todd Pac. Shipyards Corp., 151 Wn.2d 853, 866, 93 P.3d 108 (2004). The parties in this case do not dispute that the prior lawsuit ended in

---

[10] As the U.S. Supreme Court has noted, the terms "claim preclusion" and "issue preclusion" "have replaced a more confusing lexicon. Claim preclusion describes the rules formerly known as 'merger' and 'bar,' while issue preclusion encompasses the doctrines once known as 'collateral estoppel' and 'direct estoppel.' " Taylor v. Sturgell, 553 U.S. 880, 892 n.5, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) (citing Migra v. Warren City Sch. Dist. Bd. of Ed., 465 U.S. 75, 77 n.1, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984)).

a final judgment and they have a concurrence of identity as to parties and the quality of the persons.[11]

In addition to precluding claims that were brought, the doctrine of claim preclusion applies to entire claims that *could have been* brought in a prior action. Weaver, 194 Wn.2d 481. When the parties to two successive proceedings are the same and the first proceeding resulted in a final judgment, "a matter may not be relitigated, or even litigated for the first time, if it could have been raised, and in the exercise of reasonable diligence should have been raised, in the prior proceeding." Kelly-Hansen v. Kelly-Hansen, 87 Wn. App. 320, 328-29, 941 P.2d 1108 (1997).

Determining whether a matter should have been litigated requires consideration of several factors, including "whether the present and prior proceedings arise out of the same facts, whether they involve substantially the same evidence, and whether rights or interests established in the first proceeding would be destroyed or impaired by completing the second proceeding." Id. at 330. Courts have determined that a matter should have been raised for the purposes of claim preclusion if it is "merely an alternate theory of recovery, or an alternate remedy." Id. at 331. Claim preclusion does not apply if a necessary fact was not in existence at the time of the first proceeding, or if there were valid reasons for not asserting the claim earlier. Kelly-Hansen, 87 Wn. App. at 331.

---

[11] A stipulated dismissal with prejudice is a final judgment on the merits for the purposes of claim preclusion. Berschauer Phillips Const. Co. v. Mutual of Enumclaw Ins. Co., 175 Wn. App. 222, 228 n.11, 308 P.3d 681 (2013).

Whether claim preclusion applies is a question of law reviewed de novo. Weaver, 194 Wn.2d at 473.

I.      Waiver of Affirmative Defense

Bagot claims Russell/SMRB waived the affirmative defense of claim preclusion through the civil rules and common law waiver. Generally, affirmative defenses such as claim preclusion are waived unless they are pleaded, asserted in a CR 12(b) motion, or tried by the express or implied consent of the parties. CR 8(c); Bickford v. City of Seattle, 104 Wn. App. 809, 813, 17 P.3d 1240 (2001). Additionally, "under the common law doctrine of waiver, waiver of affirmative defenses can occur under certain circumstances in two ways: if the defendant's assertion of the defense is inconsistent with the defendant's previous behavior and if defendant's counsel has been dilatory in asserting the defense." Oltman v. Holland Am. Line USA, Inc., 163 Wn.2d 236, 246, 178 P.3d 981 (2008). However, "the rule's policy is to avoid surprise and affirmative pleading is not always required." Bickford, 104 Wn. App. at 813.

Russell/SMRB does not dispute that they neither pleaded claim preclusion in their answer nor filed a motion under CR 12(b). Despite these omissions, Bagot responded to the motion for summary judgment and contested application of the doctrine during oral arguments before the trial court.[12] Bagot thoroughly participated in contesting the merits of the claim preclusion argument in response

---

[12] For the first time on appeal, Bagot argues the April 2018 e-mail from Bagot's counsel was inadmissible as summary judgment evidence. Bagot did not raise the issues of admissibility or authenticity below. Without an objection and trial court ruling to review, we cannot address the issue of admissibility Bagot now raises. "It is our duty to review evidentiary rulings made by the trial court; we do not ourselves make evidentiary rulings." Jacob's Meadow Owners Ass'n v. Plateau 44 II, LLC, 139 Wn. App. 743, 756, 162 P.3d 1153 (2007). Furthermore, the trial court considered the e-mail exhibit on summary judgment. Bagot waived his evidentiary challenge.

to Russell/SMRB's summary judgment motion. "When issues that are not raised by the pleadings are tried by express or implied consent of the parties, they will be treated in all respects as if they had been raised in the pleadings." Dewey v. Tacoma Sch. Dist. No. 10, 95 Wn. App. 18, 26, 974 P.2d 847. Bagot's litigation of the issue of claim preclusion before the trial court constituted implied consent. Thus, he waived his claim that Russell/SMRB waived the affirmative defense.

II.      Application of Doctrine of Claim Preclusion

Russell/SMRB claims the trial court erred by failing to dismiss the Securities Act claim as precluded under the doctrine of claim preclusion. Russell/SMRB argues that Bagot pleaded a common law securities claim in Skagit County, relying on the e-mail message to show that Bagot knew of the Securities Act when he filed the Skagit lawsuit. Bagot contends because he did not know of the fraudulent investment scheme at the time of the Skagit lawsuit, his claims were not ripe, and therefore he could not have brought the Securities Act claim in April 2018. We agree with Russell/SMRB.

Securities Act claims require a fraudulent or deceitful act committed in connection with the offer, sale or purchase of any security. RCW 21.20.010; Kinney v. Cook, 159 Wn.2d 837, 842, 154 P.3d 206 (2007). For the purposes of the Act, the definition of a "security" " 'embodies a flexible rather than a static principle, one that is capable of adaptation to meet the countless and variable schemes devised by those who seek the use of the money of others on the promise of profits.' " Cellular Eng'g, Ltd. v. O'Neill, 118 Wn.2d 16, 24, 820 P.2d

13

941 (1991) (quoting <u>Securities & Exch. Comm'n v. W.J. Howey Co.</u>, 328 U.S. 293, 299, 66 S. Ct. 1100, 90 L. Ed. 1244 (1946)).

The Skagit complaint effectively pleaded the Securities Act violation through common law claims. For instance, the claim for negligent misrepresentation includes an allegation of defendants' failure to disclose that "the ownership interest held by the non-i502 Nevada limited liability company (Green Acres Pharms, LLC) in SMRB d.b.a. Green Acres Pharms that may substantially dilute or limit the interest Plaintiff was caused to believe he was purchasing by and from Defendants." Further, the Skagit complaint alleges that "the disclosure of this information would have caused Mr. Bagot to act differently in ways including, but not limited to, issuing the $100,000 (one hundred thousand dollar) principal at issue in this action, signing the Agreement, and acquiring ownership interest in Green Acres Pharms." In support of the negligent misrepresentation cause of action, Bagot's complaint alleges a deceitful act—the failure to disclose—in connection with the sale of interest which meets the elements of a Securities Act claim.

Similarly, the conspiracy claim in the Skagit case alleged, "A combination of Defendants SMRB d.b.a. Green Acres Pharms, Green Acres Pharms, LLC, Robert Russell, and Guy Griffithe worked in concert to unlawfully deprive Mr. Bagot of his money, ownership interest and resulting rights in, and quarterly disbursements from SMRB d.b.a. Green Acres Pharms." This pleading describes a deceitful act related to Bagot's purchase of an interest in the companies. Again, these allegations state facts that could establish a Securities Act claim. The

14

promissory note did not provide an ownership interest. And the Skagit lawsuit names multiple defendants, even though the promissory note was signed only by Bagot and Griffithe. Therefore, the pleadings in the Skagit case pertain to more than just the promissory note; they reach the investment scheme as a whole. Proof of the Skagit claim requires evidence regarding the entire investment relationship between the various parties, beyond the limited scope of default on the promissory note.

The King County Securities Act claim includes language similar to that used in the Skagit complaint. The complaint alleges that the defendants offered for sale non-registered corporate securities, including stock/membership interest in RTSI and/or SMRB which was an unlawful offer and sale of security, and they "made untrue statements and/or omitted material facts, and engaged in an act, practice, course of business, or employed a device, scheme, or artifice in order to operate a fraud or deceit upon Plaintiff." These allegations mirror the Skagit lawsuit claim that Defendants' misrepresentations caused him to purchase ownership in the companies. The claims arise out of the same facts: the alleged misrepresentations and the $650,000 investment for ownership in the companies. Both the Skagit misrepresentation claim and the King County Securities Act claim would hinge on evidence related to the entire investment transaction.

Moreover, the April 2018 e-mail from Bagot's lawyer, sent the day the Skagit lawsuit was filed, confirms Bagot was aware of the facts giving rise to his claim that that the investment scheme violated the Securities Act. "Knowledge by

the attorney is imputed to the client." Hill v. Dep't of Lab. & Indus., 90 Wn.2d 276, 279, 580 P.2d 636 (1978). The e-mail stated that Bagot was "lured" to invest and informed one of the investment group executives, "You and your colleagues have committed securities fraud." The e-mail indicates that Bagot knew the facts underlying his claims of securities violations and the claim was ripe at the time of filing of the Skagit lawsuit.

This situation differs from cases where the facts related to the second lawsuit had yet to occur when the first was concluded. For example, in Weaver, the plaintiff filed for temporary disability believing that he was cured of his cancer-related claims, but later discovered the cancer had metastasized. 194 Wn.2d at 482. The permanent disability claim did not exist and, therefore, could not be litigated at the time of the temporary disability claim. Id. By contrast, the record here indicates Bagot already knew that securities violations had occurred when he filed the Skagit case.

As for the trial court's grant of the defendants' motions for summary judgment dismissing Bagot's other claims based on claim preclusion, the commissioner denied discretionary review, ruling that Bagot had failed to meet any of the criteria for review under RAP 2.3(b)(1), (2), and (3). Bagot did not seek modification of the commissioner's ruling. Accordingly, we decline to review the issues raised in Bagot's motion for discretionary review.

CONCLUSION

Bagot's Securities Act claim could have been brought at the time of the Skagit case and is, therefore, precluded under the doctrine of claim preclusion.

We reverse the trial court's denial of summary judgment as to that claim and remand for further proceedings consistent with this decision.

_Chung, J._

WE CONCUR:

_Bowman, J_                    _Dwyer, J._