**IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON**

| | |
|---|---|
| LAWRINA HARRIS,<br><br>                Respondent,<br><br>           v.<br><br>JAMES CHRISTIANSON,<br><br>                Appellant. | No. 86079-8-I (consolidated with No. 87284-2-I)<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

FELDMAN, J. — James Christianson, representing himself, appeals from a superior court order granting Lawrina Harris' petition for a permanent domestic violence protection order (DVPO) against him and denying his petition for a DVPO against Harris. Christianson does not establish that the superior court abused its discretion or otherwise erred. We therefore affirm.

I

Christianson and Harris were previously engaged in a dating relationship and have a history of seeking prior protection orders. Relevant here, Christianson obtained a one-year DVPO against Harris, which expired on July 5, 2023. Two days later, on July 7, 2023, Harris petitioned for a permanent antiharassment protection order to protect herself and her minor child from Christianson's "harassing" and "stalking behavior." Harris alleged that Christianson repeatedly

uses process servers or postal mail to send "X-rated photos" of her to her home and landlord, contacts her family members and her daughter's daycare to spread false claims about her, and posts malicious content about her on the internet. A superior court commissioner declined to enter a temporary order of protection and set the matter for a full hearing. Shortly thereafter, Christianson petitioned for a DVPO protecting him from Harris.

On August 22, 2023, the superior court commissioner conducted a hearing addressing both parties' petitions. After hearing testimony from Christianson and Harris, the commissioner found Harris credible and determined that "it is more likely than not that [Christianson] has engaged in acts of domestic violence through a course of unlawful harassment and coercive control." The commissioner therefore granted Harris' petition and entered a permanent DVPO protecting Harris and her minor children. The DVPO required Christianson to surrender weapons, participate in an approved domestic violence perpetrator treatment program, delete and cease disclosure of intimate images of Harris, and remove all references to Harris from his social media. The commissioner also denied Christianson's petition for a DVPO against Harris, finding that Christianson was not credible, that his materials are replete with hyperbolic and unsubstantiated claims, and that he acted to harm Harris. Christianson moved for reconsideration of both orders, which the commissioner denied.

Christianson then moved to revise the commissioner's orders. Christianson and Harris appeared pro se and testified at a revision hearing on October 27, 2023. At the conclusion of the hearing, the superior court found that Harris "presented

evidence sufficient to meet her burden of proof of harassment since August 2022 by Mr. Christianson." But the court did not find that Christianson exercised coercive control or that the images he posted were "intimate images" as defined in RCW 9A.86.010(6)(b), and it declined to order weapons surrender or to direct Christianson to domestic violence treatment. Accordingly, the court denied in part and granted in part Christianson's motion for revision and issued a DVPO reflecting these modifications. The superior court also found that Christianson did not present evidence sufficient to meet his burden of proof as petitioner and thus denied his motion to revise the order denying his petition for a DVPO against Harris. Christianson filed three motions for reconsideration, all of which the superior court denied. This timely appeal followed.

II

Christianson argues the superior court erred in denying his motion to revise with regard to both (a) the DVPO against him and (b) the requested DVPO against Harris. We disagree with both arguments.

A

A commissioner's decision granting a DVPO is subject to revision by the superior court. RCW 2.24.050. On a motion to revise, the superior court reviews the commissioner's findings of fact and conclusions of law de novo based on the evidence and issues presented to the commissioner. *In re Marriage of Moody*, 137 Wn.2d 979, 992-93, 976 P.2d 1240 (1999). A superior court's decision to grant or deny a DVPO is reviewed for abuse of discretion. *Maldonado v. Maldonado*, 197 Wn. App. 779, 789, 391 P.3d 546 (2017). So, too, is an order

denying a motion for reconsideration. *In re Marriage of Tomsovic*, 118 Wn. App. 96, 108, 74 P.3d 692 (2003). A court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons. *In re Marriage of Chandola*, 180 Wn.2d 632, 642, 327 P.3d 644 (2014).

Our review of factual findings is also deferential. We view the evidence and reasonable inferences in the light most favorable to the party who prevailed below. *Garza v. Perry*, 25 Wn. App. 2d 433, 453, 523 P.3d 822 (2023). We also defer to the superior court's determinations regarding the persuasiveness of the evidence, witness credibility, and conflicting testimony. *In re Vulnerable Adult Pet. for Knight*, 178 Wn. App. 929, 937, 317 P.3d 1068 (2014). Our role is simply to determine whether substantial evidence supports the trial court's findings of fact and whether those factual findings support the conclusions of law. *In re Marriage of Greene*, 97 Wn. App. 708, 714, 986 P.2d 144 (1999). Substantial evidence "exists if the record contains evidence of a sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *In re Marriage of Fahey*, 164 Wn. App. 42, 55, 262 P.3d 128 (2011).

Under RCW 7.105.225(1)(a), a court must issue a DVPO if it finds by a preponderance of the evidence that "the petitioner has been subjected to domestic violence by the respondent." Domestic violence includes "unlawful harassment . . . of one intimate partner by another intimate partner." RCW 7.105.010(10)(a). Two people are "intimate partners" if they "have or have had a dating relationship where both persons are at least 13 years of age or older." RCW 7.105.010(21)(d). Unlawful harassment is defined, in relevant part, as

> [a] knowing and willful course of conduct directed at a specific person that seriously alarms, annoys, harasses, or is detrimental to such person, and that serves no legitimate or lawful purpose. The course of conduct must be such as would cause a reasonable person to suffer substantial emotional distress, and must actually cause substantial emotional distress to the petitioner.

RCW 7.105.010(37)(a). "Course of conduct" is defined as "a pattern of conduct composed of a series of acts over a period of time, however short, evidencing a continuity of purpose," including "any form of communication, contact, or conduct, including the sending of an electronic communication, but does not include constitutionally protected free speech." RCW 7.105.010(7)(a).

B

Contrary to Christianson's principal argument on appeal, substantial evidence supports the superior court's finding that he committed domestic violence against Harris by unlawfully harassing her. In her DVPO petition, Harris attached photographs of derogatory materials and images Christianson repeatedly caused to be delivered to her by process server and mail. Christianson addressed these documents to "LaLaLuvs You Prostitution Services HQ: Attn Owner Lawrina Harris." The superior court found Harris credibly testified that Christianson personally chauffeurs process servers to her residence and that she received electronic communications from strangers as a result of Christianson's postings on the internet. The record also establishes that Christianson contacted people in Harris' life to malign her. And Christianson and Harris are intimate partners because they had a dating relationship. This evidence is enough to persuade a fair-minded, rational person that Christianson knowingly and willfully engaged in an annoying, harassing, or detrimental course of conduct directed at Harris that

served no legitimate or lawful purpose, as required by RCW 7.105.010(36)(a). And given Harris' testimony that Christianson "ruined my reputation" and that her "life is in shambles" because of his actions, substantial evidence also supports the statutory requirement that the unlawful course of conduct "must actually cause substantial emotional distress to the petitioner." RCW 7.105.010(37)(a).

Christianson's contrary arguments lack merit. Christianson argues the DVPO was not supported by substantial evidence because his conduct did not constitute "unlawful harassment" as defined by RCW 7.015.010(37)(a). He asserts he has not contacted her since May 2022 and contends that service of legal documents and warning others about her is not harassment. But a harassing "course of conduct" can include "any form of communication, contact, or conduct." RCW 7.105.010(7)(a). The derogatory materials Christianson repeatedly sent to Harris plainly meet this definition. And although service of process is a legitimate and lawful purpose for contact, the superior court did not abuse its discretion in finding that Christianson's "willful conduct goes beyond ordinary service of process and, together with all the acts, is intended to, and does, alarm, annoy, and cause detriment to Ms. Harris."

Christianson also challenges the superior court's credibility findings and contends that the court failed to consider Harris' history of hostility and conflict with others. In doing so, Christianson asks us to reexamine the evidence and reach a different conclusion than the superior court below. But "[t]his court does not substitute its judgment for that of the trial court or reweigh the evidence or the credibility of the witnesses." *In re Marriage of Weaver*, 20 Wn. App. 2d 388, 413,

505 P.3d 560 (2021). Consistent with the deferential standard of review regarding factual issues, we decline to substitute our judgment for that of the superior court here.

Next, Christianson argues the order was barred by claim preclusion (also referred to as res judicata), issue preclusion (also referred to as collateral estoppel), and judicial estoppel. Issue preclusion "bars relitigation of particular issues decided in a prior proceeding," whereas claim preclusion "bars litigation of claims that were brought or might have been brought in a prior proceeding." *Weaver v. City of Everett*, 194 Wn.2d 464, 473, 450 P.3d 177 (2019). Judicial estoppel is "an equitable doctrine that precludes a party from gaining an advantage by asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position." *Cunningham v. Reliable Concrete Pumping, Inc.*, 126 Wn. App. 222, 224-25, 108 P.3d 147 (2005). Whether these doctrines apply is a question of law reviewed de novo. *Ensley v. Pitcher*, 152 Wn. App. 891, 899, 222 P.3d 99 (2009).

Christianson argues Harris' claims are barred because they were already litigated and dismissed in her four previous petitions for orders of protection against him. Relatedly, he asserts that the superior court's order is not based on new allegations. But the superior court expressly found that "[r]es judicata does not bar Ms. Harris's claims, which are based on current harassment today upon consideration of the totality of circumstances, with a focus on conduct from August 2022 to the present." The record before us does not include the report of proceedings from the August 22, 2023 hearing before the commissioner, so no

evidence supports Christianson's assertion that the commissioner announced on the record that she was "going to waive res judicata" and allow the whole history of the parties' disputes to be relitigated. And because Christianson argues that Harris' positions were the same, not that they were inconsistent, judicial estoppel does not apply.

Next, Christianson argues both the superior court and the commissioner below displayed judicial bias and violated the appearance of fairness doctrine. We generally review claims of judicial bias under the appearance of fairness doctrine, which states that "a judicial proceeding is valid only if a reasonably prudent and disinterested person would conclude that all parties obtained a fair, impartial, and neutral hearing." *In re Marriage of Meredith*, 148 Wn. App. 887, 903, 201 P.3d 1056 (2009). A party claiming an appearance of fairness violation must present specific evidence of a violation; mere speculation is not enough. *Tatham v. Rogers*, 170 Wn. App. 76, 96, 283 P.3d 583 (2012). Applying these principles here, Christianson's judicial bias claims easily fail. He principally claims "overt egregious bias" is the only possible explanation for the superior court's orders, but substantial evidence supported the superior court's rulings so the outcome does not demonstrate bias. He also claims the superior court commissioner was incapable of treating him objectively because he filed a complaint alleging that the commissioner violated the Code of Judicial Conduct. This purely speculative assertion is not evidence of bias.

Lastly, Christianson argues "[t]he disregard for due process was egregious" because he "was not served and didn't get to see pleadings or claims before the

hearing." He insists that he was treated "like a black man in Jim Crow South or like a Japanese citizen during [World War] 2 or a woman victim of assault before rape shield laws." But the amended DVPO contains findings stating that Christianson was served and had actual notice of the hearing. And the superior court expressly found that "[t]he proceedings were regularly conducted and all parties were given an opportunity to present materials and testimony." The record amply supports these findings. The superior court did not abuse its discretion, or otherwise err, in entering the DVPO protecting Harris and her minor child.

C

Turning to the requested DVPO against Harris, substantial evidence also supports the superior court's order denying Christianson's motion to revise the commissioner's order denying Christianson's petition. The record shows that Christianson's evidence and testimony consists largely of documents and affidavits from other matters and allegations regarding Harris' character that were not relevant to his claim that she committed domestic violence against him during the previous year. In its written order, the superior court noted that credible evidence showed Harris threatened Christianson by text in August 2022, but that there is no persuasive evidence that Harris thereafter harassed him or pursued any contact with him during the following year. Christianson alleged that Harris posed as "yousofake" to harass him via Instagram in May 2023. But Harris denied this under oath, and Christianson's claims to the contrary were speculative at best. Christianson also submitted minutes from a January 23, 2023 district court hearing in support of his claim that Harris harassed him at the hearing. But the superior

court found that no witnesses corroborated this claim and that Christianson's credibility was diminished by evidence that he redacted information about his arguably negative behavior and by his admission that he failed to disclose all court actions between the parties in his petition. We will not reweigh this evidence or disturb the court's credibility determinations. *Knight*, 178 Wn. App. at 937. And as discussed above, Christianson has not shown that the proceedings were procedurally deficient.

III

Because the superior court's rulings were not manifestly unreasonable or based on untenable grounds, it did not abuse its discretion by denying Christianson's motion to revise the commissioner's orders.

Affirmed.

Feldman, J.

WE CONCUR: