IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | |
|---|---|
| CHRISTIAN TODD PRIMACK METCALFE, | No. 85569-7-I |
| Appellant, | |
| v. | UNPUBLISHED OPINION |
| SPRUCE STREET SCHOOL and DONNA M. COCHENER, | |
| Respondents. | |

BOWMAN, J. — Christian Metcalfe sued Spruce Street School, alleging retaliation under the Washington Law Against Discrimination (WLAD), chapter 49.60 RCW, for his efforts to advocate on behalf of his special-needs children. Donna Cochener, Metcalfe's former wife and the children's mother, intervened in the action and opposed the lawsuit. Spruce Street moved to dismiss, arguing that issue preclusion barred the lawsuit because the family law court ruled in a parenting plan modification proceeding that Metcalfe's actions did not amount to protected conduct under the WLAD. The trial court agreed, granted summary judgment dismissal of Metcalfe's WLAD complaint, and awarded Spruce Street and Cochener attorney fees. We reverse the trial court's order dismissing Metcalfe's lawsuit and its order awarding Spruce Street and Cochener attorney fees and remand for further proceedings, but we affirm the court's order issuing discovery sanctions against Metcalfe.

FACTS

Metcalfe and Cochener have two minor children, M.C. 1 and M.C. 2.[1] Both kids have significant learning disabilities. M.C. 1 is autistic and diagnosed with sensory processing disorder (SPD), attention deficit and hyperactivity disorder (ADHD), apraxia of speech, dyslexia, dysgraphia, and fine/gross motor coordination issues. M.C. 2 is diagnosed with ADHD, anxiety, obsessive compulsive disorder, SPD, dysgraphia, and fine/gross motor coordination issues. The children require significant academic and behavioral support at school. Metcalfe and Cochener enrolled them at Spruce Street, a private school in downtown Seattle serving kindergarten to fifth-grade students.

Metcalfe and Cochener divorced in September 2016. Their parenting plan provided for joint medical and educational decision-making for the children, including the selection of schools. In September 2018, Cochener joined Spruce Street's board of trustees (Board). After Cochener joined the Board, Metcalfe began to complain about the school's communication with him and its treatment of the children.

When M.C. 1 returned to Spruce Street in fall 2018, Metcalfe says he "noticed a clear decline in the amount of communication provided by [Spruce Street] teachers about M.C. 1's days." As the school year progressed, Metcalfe engaged in several contentious email and in-person discussions with Spruce Street teachers about M.C. 1. Among other things, Metcalfe disagreed with the school's changes to M.C. 1's "behavioral chart," a tool used to track his academic

_____

[1] Throughout the record and briefing, the parties refer to the children as "Minor Child 1" and "Minor Child 2." We use the same naming convention.

and behavioral progress.  In an October 2018 email, Metcalfe demanded that Spruce Street cease using the chart.  Three months later in a January 2019 email, Spruce Street Head of School Briel Schmitz told Metcalfe that his "actions, including . . . aggressive sounding emails, and relentless request[s] for more from the school," contributed to a stressful relationship with staff.

In April 2019, Metcalfe demanded limitations on Cochener's Board activities "so long as either of our children are enrolled" at the school.  The next month, Metcalfe emailed Spruce Street to request that it resume using a daily behavioral chart with M.C. 1.  Spruce Street responded that it uses these charts as "targeted interventions . . . for a specific purpose, usually with a goal of phasing them out once a behavioral goal is met."  And it concluded M.C. 1 did not currently need a behavioral chart.  Soon after, Metcalfe attended a school meeting and presented a letter from M.C. 1's physician, advocating that a daily behavioral chart would be "extremely helpful" and provide structure for M.C. 1.  A few days later, Spruce Street began using the chart again.

In late May 2019, Spruce Street told Metcalfe and Cochener that in order to reenroll M.C. 1 for his final year, they needed to agree to a "restrictive communication plan" with the school.  Metcalfe resisted the plan and wanted to remove M.C. 1 from the school.  This led to an arbitration in their family law case.

In July 2019, Metcalfe and Cochener entered an agreed arbitration order, stating that M.C. 1 could continue attending Spruce Street and that Metcalfe agreed to "cooperate in developing a reasonable communication plan with Spruce Street."  On August 2, 2019, Spruce Street emailed a potential

communication plan to Metcalfe and Cochener.  The plan limited family/teacher meetings to three times a year and emails to one per week.

On August 7, 2019, Metcalfe filed a complaint with the Washington State Human Rights Commission (HRC).  The complaint alleged that

> Spruce Street School sent a "communication plan" that I believe discriminates against [M.C. 1] and our ability as his caregivers to support his success.  The plan attempts to severely and inappropriately restrict communication with the school.

Throughout August 2019, Metcalfe, Cochener, and Spruce Street exchanged several emails about the communication plan.  Metcalfe objected to the school placing any limitations on his communication with teachers.  Spruce Street agreed that instead of weekly emails, its teachers would fill out a daily form providing feedback on M.C. 1's behavioral and academic progress.  And it agreed to remove restrictions prohibiting contact with teachers, provided that "if [Metcalfe's] pattern of informal conversations leading to frustration and/or multiple emails [continues], we will need to revisit this plan."

On August 20, 2019, an HRC investigator emailed Metcalfe that "based on the evidence you provided there was enough for us to determine that at this stage, it seems more likely than not that discrimination occurred."  Metcalfe then provided the August 2019 emails with Spruce Street to the HRC investigator.  HRC found that the harm had been resolved because Spruce Street agreed to provide the requested accommodation and changed the communication plan.  In early September, HRC administratively dismissed the complaint.

In late November 2019, Cochener again requested arbitration to resolve issues related to the parenting plan.  Cochener sought to keep M.C. 1 and M.C. 2

4

enrolled in Spruce Street and to retain M.C. 1's tutor. She alleged that Metcalfe violated several provisions of the parenting plan and tried to undermine the July 2019 agreed arbitration order. According to her, he did this by attempting to provoke Spruce Street into terminating the children's enrollment contracts by filing a "meritless" HRC complaint. On December 18, 2019, the arbitrator ordered that both children must continue to attend Spruce Street through the school year and that M.C. 1 will continue to work with his tutor. Meanwhile, on December 3, 2019, Metcalfe filed another HRC complaint, alleging that Spruce Street had not provided the promised accommodation for M.C. 1.

In February 2020, Spruce Street's attorney notified Cochener that the school would not be offering a reenrollment contract for M.C. 2.[2] Spruce Street noted that while the school "has the resources and desire" to continue accommodating M.C. 2, it "cannot devote more time, energy and resources to dealing with [his] father." And while the parties had entered into a communication plan, it had not "resulted in productive communication with Mr. Metcalfe, or effectively limited the volume of communication he generates." The school concluded that "[i]f this issue could be resolved, it is possible that the School could offer reenrollment for MC 2." In response, Cochener requested that Metcalfe arbitrate whether to reenroll M.C. 2 at Spruce Street for another year. She also wanted to resolve where to send M.C. 1 for the upcoming school year. Metcalfe refused to arbitrate.

---

[2] M.C. 1 would be graduating from Spruce Street in the spring.

In March 2020, Metcalfe and Cochener cross petitioned to modify the 2016 parenting plan, each arguing they should be granted sole decision-making authority.[3] Cochener also moved for the court to order that M.C. 2 remain enrolled at Spruce Street. On June 23, 2020, a superior court commissioner entered a temporary family law order, denying both parents' requests for temporary sole decision-making authority. It ordered that M.C. 1 will attend Hamilton International Middle School and that M.C. 2 will continue to attend Spruce Street.[4] But the court prohibited Metcalfe from communicating with the school except at regularly scheduled parent-teacher conferences, curriculum nights, school events, or in an emergency.

After the family court's ruling, Metcalfe agreed to another communication plan with Spruce Street, and the school reenrolled M.C. 2. In August 2020, Metcalfe filed a third HRC complaint, again alleging that Spruce Street retaliated against him for advocating for M.C. 1.[5]

The six-day parenting plan modification trial occurred in summer 2021. Cochener argued that Metcalfe engaged in excessive conflict, made unreasonable demands of providers, and distorted information between the parties and providers. Metcalfe argued that Cochener downplayed the extent of

---

[3] We adopt the facts in the family law matter as presented in *In re Marriage of Cochener*, No. 83271-9-I (Wash. Ct. App. Aug 14, 2023) (unpublished), https://www.courts.wa.gov/opinions/pdf/832719.pdf.

[4] The commissioner also granted Metcalfe's request to appoint a guardian ad litem.

[5] On December 18, 2020, HRC sent Metcalfe notice that it had administratively closed his December 2019 discrimination claim. It is unclear from the record on appeal, but it appears that HRC also took no action on his third complaint. The parties do not dispute this.

the children's special needs, did not advocate for the children, and did not cooperate with Metcalfe in decision-making. Metcalfe also argued that his communications with Spruce Street amounted to protected advocacy:

> It is important that this Court understand that the school's acts constituted unlawful discrimination (under federal and state law) against [me] for seeking reasonable accommodations for the parties' other special needs child, [M.C. 1]. . . . Spruce Street's discrimination alone is a basis to deny [Cochener]'s requests to have [M.C. 2] attend that school.

The family law court issued written findings and conclusions in October 2021, granting Cochener sole decision-making authority. The court found:

> Father's interpersonal communication has alienated important people in M.C. 1 and [M.C. 2's] lives. Father's advocacy efforts have been described as "overwhelming", "burdensome", "intimidating", "persistent", "tenacious", and "manipulative". . . .
>
> [ ]
>
> . . . . Mother will be responsible for sole decision-making going forward because Mother has *less* deficits than Father in the area of interpersonal communication.

Metcalfe appealed, arguing that the family law court abused its discretion by relying on Metcalfe's "protected advocacy for his children" to find his "communication deficits." We disagreed and affirmed the trial court's order.[6]

In May 2022, Metcalfe sued Spruce Street, alleging retaliation under the WLAD. Metcalfe claimed:

> Mr. Metcalfe's accommodation requests on behalf of MC 1 as well as his three HRC complaints constitute protected activity under the

---

[6] *Cochener*, No. 83271-9-I, slip op. at 13-15. We reversed on an unrelated provision related to "the religious upbringing" of the children and remanded "for the religious decision-making provision to be revised to reflect the parties' agreement that mutual nondisparagement of each parent's spirituality is sufficient." *Id.* at 26.

No. 85569-7-I/8

> WLAD and retaliation against an HRC complainant is expressly
> prohibited by RCW 49.60.210.
> . . . .
> . . . [Spruce Street]'s retaliatory acts include, but are not
> limited to, subjecting Mr. Metcalfe to a communication plan in
> August 2019, conditioning MC 2's return to [Spruce Street] on Mr.
> Metcalfe's acquiescence to a communication plan, limiting Mr.
> Metcalfe's contact with MC 2's educators, barring Mr. Metcalfe's
> domestic partners from attending meetings regarding MC 2,
> excluding Mr. Metcalfe from [Spruce Street] community email lists,
> and subjecting Mr. Metcalfe to communication restrictions after the
> family law court (in the summer of 2021) declined to impose those
> restrictions.

Metcalfe sought money damages and an injunction ordering Spruce Street to

> (a) not prohibit Mr. Metcalfe's communication with [Spruce Street]
> regarding MC 2, (b) restore Mr. Metcalfe to the [Spruce Street]
> community email lists, [and] (c) not bar Mr. Metcalfe's domestic
> partners from parent teacher conferences without the permission of
> its Trustee, Ms. Cochener.

In June 2022, Metcalfe propounded discovery requests on Spruce Street, asking for email and text communications between several Spruce Street employees. Spruce Street objected to the request. And in July 2022, Metcalfe moved for a preliminary injunction barring the school from issuing restrictive communication plans. Then, in August, Cochener moved to intervene in Metcalfe's lawsuit under CR 24(a), arguing that his suit aimed to circumvent the terms of their parenting plan.

In September 2022, the court denied Metcalfe's motion for a preliminary injunction. The court found that Metcalfe "does have a right to be free from unlawful retaliation, however, he does not currently have a right to unrestricted communication with [Spruce Street] regarding his son under the orders in the Family Law Case." And it concluded that Metcalfe's motion was "a collateral

8

attempt to avoid" the family law court's orders. The trial court also granted Cochener's motion to intervene.

In late September 2022, Metcalfe's attorney requested to meet and confer with Spruce Street about his discovery requests under CR 26(i). The parties conferenced on September 29, 2022, and Spruce Street's attorney told Metcalfe that she would ask the school to "recheck its servers for responsive documents" and communications. The parties agreed to limit the search of personal devices to Head of School Schmitz's. Spruce Street then searched its servers for responsive documents and communications and subsequently supplemented its discovery responses.

In February 2023, Metcalfe deposed two school employees. He asked both employees whether they searched their email for documents responsive to his discovery request. Both employees denied searching their email for documents, and one employee said she located "[m]aybe three or four, four or five" responsive emails while preparing for her deposition. Based on this testimony, Metcalfe determined Spruce Street had not complied with his discovery request.

On March 6, 2023, the parties held another CR 26(i) conference on a different issue. At the conference, Metcalfe did not discuss his suspicion that Spruce Street had not complied with his discovery request. Instead, on March 9, Metcalfe moved again to compel production of the email communications. The trial court denied Metcalfe's motion and awarded Spruce Street attorney fees as

9

a sanction, finding that "[a] CR 26(i) conference must be within reasonable proximity to the motion filed. [Five] months is not reasonable."

On May 26, 2023, Spruce Street moved for summary judgment dismissal, arguing that issue preclusion bars Metcalfe's lawsuit because "the issues which Metcalfe seeks judgment on are identical to those already ruled upon . . . [i]n the family law trial." The trial court granted the motion, ruling:

> The elements [of issue preclusion] are met.
> At the Family law matter . . . , [Metcalfe] specifically alleged [and] claimed that Spruce Street School had retaliated against him. . . . [His] declarations are of a similar content.
> These are identical issues that he raised to support his claim that he should have sole decision making authority.
> [The family law court] . . . ruled against him.

In July 2023, Cochener moved for attorney fees and costs under RCW 4.84.185 and CR 11. Spruce Street moved for fees on the same grounds. The trial court awarded both parties fees under only RCW 4.84.185, determining that Metcalfe's action was frivolous.

Metcalfe appeals.

ANALYSIS

Metcalfe argues the trial court erred by dismissing his complaint at summary judgment, awarding Spruce Street and Cochener attorney fees, and issuing sanctions after denying his second motion to compel. Cochener asks for attorney fees on appeal. We address each argument in turn.

10

1.  Summary Judgment

Metcalfe argues the trial court erred by concluding that issue preclusion barred his complaint. We agree.[7]

We review summary judgment orders de novo. *Weaver v. City of Everett*, 194 Wn.2d 464, 472, 450 P.3d 177 (2019). We view all facts and reasonable inferences in the light most favorable to the nonmoving party. *Id.* "Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Id.* (citing CR 56(c)).

Issue preclusion is an equitable doctrine that "bars relitigation of particular *issues* decided in a prior proceeding." *Weaver*, 194 Wn.2d at 472-73. The party asserting issue preclusion must establish four elements:

> "(1) [T]he issue decided in the earlier proceeding was identical to the issue presented in the later proceeding; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom [issue preclusion] is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) application of [issue preclusion] does not work an injustice on the party against whom it is applied."

*Id.* at 474 (quoting *Christensen v. Grant County Hosp. Dist. No. 1*, 152 Wn.2d 299, 307, 96 P.3d 957 (2004)). We review a trial court's application of issue preclusion de novo. *Id.* at 473.

---

[7] At oral argument, Spruce Street argued that even if we agree the trial court erred, we should affirm the court's dismissal based on the merits of their summary judgment motion below. But the court dismissed Metcalfe's claim based on issue preclusion and did not consider the merits of the summary judgment motion. And we seldom address issues the trial court has not decided. *See Pascua v. Heil*, 126 Wn. App. 520, 533, 108 P.3d 1253 (2005); *see also* RAP 2.5(a). So, we decline the invitation to consider the merits of Spruce Street's summary judgment motion.

Issue preclusion applies in "situations where the issue presented in the second proceeding is identical in all respects to an issue decided in the prior proceeding, and 'where the controlling facts and applicable legal rules remain unchanged.' " *Lemond v. Dep't of Licensing*, 143 Wn. App. 797, 805, 180 P.3d 829 (2008)[8] (quoting *Standlee v. Smith*, 83 Wn.2d 405, 408, 518 P.2d 721 (1974)).  Courts extend issue preclusion to only " 'ultimate facts,' i.e., those facts directly at issue in the first controversy upon which the claim rests, and not to 'evidentiary facts' which are merely collateral to the original claim."  *McDaniels v. Carlson*, 108 Wn.2d 299, 305-06, 738 P.2d 254 (1987) (quoting Philip A. Trautman, *Claim and Issue Preclusion in Civil Litigation in Washington*, 60 WASH. L. REV. 805, 833 (1985)); *see also State v. Eggleston*, 164 Wn.2d 61, 74, 187 P.3d 233 (2008) ("An 'ultimate fact' is a fact 'essential to the claim or the defense.' ") (quoting BLACK'S LAW DICTIONARY 629 (8th ed. 2004)).

The identicality requirement is not satisfied "[w]here an issue arises in two entirely different contexts."  *McDaniels*, 108 Wn.2d at 305.  Additionally, "[a]n important clarification of the . . . requirement that an issue was 'decided' in the earlier proceeding is that the issue must have been 'actually litigated and necessarily determined' in that proceeding."  *Scholz v. Wash. State Patrol*, 3 Wn. App. 2d 584, 595, 416 P.3d 1261 (2018) (quoting *Shoemaker v. City of Bremerton*, 109 Wn.2d 504, 508, 745 P.2d 858 (1987)).  For issue preclusion, a final judgment " 'includes any prior adjudication of an issue in another action that is determined to be sufficiently firm to be accorded conclusive effect.' "  *In re*

---

[8] Internal quotation marks omitted.

*Dependency of H.S.*, 188 Wn. App. 654, 661, 356 P.3d 202 (2015) (quoting

*Cunningham v. State*, 61 Wn. App. 562, 567, 811 P.2d 225 (1991)); *see, e.g.*,

*Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wn.2d 255, 263-64, 956 P.2d

312 (1998) (an appeal does not suspend or negate a final judgment).

Here, Metcalfe argued in the modification proceeding that the family law

court could not strip him of his decision-making authority based on his

communications with the school because he was engaged in protected conduct

under the WLAD—advocating for his special-needs children. Metcalfe also

argued that he was engaged in protected conduct in his WLAD complaint, and

that Spruce Street retaliated against him based on that conduct. So, Metcalfe

raised identical issues in each proceeding. But the family law court in the

modification proceeding did not rule on Metcalfe's claim that he engaged in

protected conduct. Instead, the court stripped Metcalfe of his decision-making

authority because his "interpersonal communication has alienated important

people" in the children's lives, and his "advocacy efforts" are overwhelming,

burdensome, intimidating, persistent, tenacious, and manipulative.

The family court ruling focused on how Metcalfe communicated with the

school, not the content of his communications.[9] In contrast, the court in

Metcalfe's WLAD lawsuit must determine whether the content of Metcalfe's

communications is protected. Because the court in the parenting plan

_____

[9] This conclusion aligns with our decision in Metcalfe's appeal from the modification ruling. In that opinion, we determined that the family law court did not base its modification ruling on any "protected" advocacy by Metcalfe. *Cochener*, No. 83271-9-I, slip op. at 20. Instead, we noted that the court awarded Cochener sole decision-making authority based on how Metcalfe communicated with M.C. 1 and M.C. 2's providers. *Id.*

modification proceeding did not actually litigate and necessarily determine whether Metcalfe's actions amount to protected conduct, issue preclusion does not bar Metcalfe's WLAD complaint.

We reverse and remand for further proceedings.[10]

2. Attorney Fees

Metcalfe argues the trial court erred by concluding his action was frivolous and awarding attorney fees under RCW 4.84.185.[11]  We agree.

We review a trial court's award under RCW 4.84.185 for an abuse of discretion.  *Koch v. Mut. of Enumclaw Ins. Co.*, 108 Wn. App. 500, 510, 31 P.3d 698 (2001).  RCW 4.84.185 authorizes the trial court to award the prevailing party reasonable expenses, including attorney fees, incurred in opposing a frivolous action.  *Id.*  Such an award is available only when the action as a whole can be considered frivolous.  *Id.*  "An appeal is frivolous only 'if no debatable issues are presented upon which reasonable minds might differ, and it is so devoid of merit that no reasonable possibility of reversal exists.' "  *Goad v. Hambridge*, 85 Wn. App. 98, 105, 931 P.2d 200 (1997) (quoting *Chapman v. Perera*, 41 Wn. App. 444, 455-56, 704 P.2d 1224 (1985)).

The trial court's order awarding fees is tethered to its finding that issue preclusion barred Metcalfe's action.  Because we reverse the court's summary

---

[10] Metcalfe asks for a different judge on remand.  Litigants are entitled to an impartial judge.  *Santos v. Dean*, 96 Wn. App. 849, 857, 982 P.2d 632 (1999).  But Metcalfe shows no bias by the trial judge.  We deny Metcalfe's request for a new judge on remand.

[11] In supplemental briefing, Cochener argues the trial court's award of attorney fees was also grounded in CR 11.  The record shows that Cochener asked the trial court for fees under both RCW 4.84.185 and CR 11, but the court awarded fees under only RCW 4.84.185.

judgment order dismissing Metcalfe's complaint, we also reverse the attorney fee awards to Cochener and Spruce Street.

3. Discovery Sanctions

Metcalfe also argues that the trial court erred by awarding attorney fees to Spruce Street as a discovery sanction under CR 26 after denying his second motion to compel. We disagree.

Under CR 26(i), a trial court "will not entertain any motion or objection" related to the discovery rules "unless counsel have conferred with respect to the motion or objection." The rule also requires that "[c]ounsel for the moving . . . party shall arrange for a mutually convenient conference." *Id.* And "[a]ny motion seeking an order to compel discovery or obtain protection shall include counsel's certification that the conference requirements of this rule have been met." *Id.* This rule is mandatory, rather than permissive. *Rudolph v. Empirical Rsch. Sys., Inc.*, 107 Wn. App. 861, 866, 28 P.3d 813 (2001).

"The primary purposes of CR 26(i) are to minimize the use of judicial resources during discovery and to encourage professional courtesy between counsel." *Amy v. Kmart of Wash. LLC*, 153 Wn. App. 846, 853, 223 P.3d 1247 (2009).

> If the court finds that counsel for any party, upon whom a motion or objection in respect to matters covered by such rules has been served, has willfully refused or failed to confer in good faith, the court may apply the sanctions provided under [CR] 37(b).

CR 26(i). A trial court exercises broad discretion in imposing discovery sanctions, and its determination will not be disturbed absent a clear abuse of that discretion. *Mayer v. Sto Indus., Inc.*, 156 Wn.2d 677, 684, 132 P.3d 115 (2006).

An abuse of discretion occurs when a decision is manifestly unreasonable or exercised on untenable grounds or for untenable reasons. *Id.*

Here, the trial court issued sanctions because Metcalfe did not confer with Spruce Street about his second motion to compel within "reasonable proximity" to the time he filed the motion. Metcalfe argues that the trial court abused its discretion by issuing sanctions because it imposed a nonexistent "temporal proximity requirement" under CR 26(i). According to Metcalfe, he conferred with Spruce Street about providing the discovery in September 2022, so there was no reason for him to discuss the subject again before bringing his subsequent motion to compel in March 2023. But Metcalfe misconstrues the trial court's reasoning and ignores the purpose of the rule.

After the parties' CR 26(i) conference in September 2022, Metcalfe deposed two school employees and discovered new information that he believed warranted his March 2023 motion to compel. But Metcalfe did not confer with Spruce Street about the new information. As the trial court recognized, Metcalfe's conference with counsel five months earlier did not achieve the purpose of minimizing the use of judicial resources to resolve his new perceived violation. Because Metcalfe made no effort to confer with Spruce Street about the new information underlying his second motion to compel, the trial court did not abuse its discretion by issuing sanctions.

We reverse the trial court's order granting summary judgment based on issue preclusion and its order awarding Spruce Street and Cochener attorney

fees and remand for further proceedings.  But we affirm the court's order issuing

discovery sanctions against Metcalfe.[12]

Brennan, J

WE CONCUR:

Feldman, J.          Chung, J.

---

[12] Cochener asks for attorney fees on appeal under RCW 4.84.185 and CR 11. Because Metcalfe's appeal is not frivolous or brought for an improper purpose, we deny her request.